GEORGE E. PARISH, APPELLEE, v. COUNTY FIRE INSURANCE
COMPANY OF PHILADELPHIA, APPELLANT.

279 N. W. 170

FILED APRIL 21, 1938.   No. 30310.

*Ramsey & Welpton,* for appellant.

*George Evens, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE,
CARTER and MESSMORE, JJ.

PAINE, J.

This is an action upon an insurance policy to recover
damages to a house, alleged to have been caused by hail
and windstorm. The jury, by a vote of 10 to 2, returned a
verdict for $2,000, being the amount of the policy. The in-
surance company appealed. The only errors relied upon
for reversal are that the verdict and judgment are con-
trary to law and not sustained by the evidence.

The action arose out of a storm that occurred in Omaha
on the afternoon of May 17, 1936. The house was a two-
story cement block house, located at 3465 Ames avenue.
The house was rented to two families, one residing on the
upper floor, which was at the street level, and the other
apartment on the lower floor, which was entered from a
door at the rear, for the ground sloped very abruptly down

from the paved street level. The house was located at the low point of the area to the west and north. This square house had a four-sided roof going up to the chimney in the middle, the chimney being four or five cement blocks high. The north part of the roof extended out as a porch in front of the house, and rested on several posts.

The evidence offered on behalf of the plaintiff disclosed that a terrific wind preceded a violent rainstorm and hail, and that there was a lull between the wind and the rain. The tenant testified that the house shook and quivered, and that the porch posts were broken loose at the bottom, and that the house was cracked and weakened by the wind. One witness testified that the roof was raised by the wind and dropped back on the house.

The defense charges that the loss and damage were caused by the high water, the rain being of cloudburst proportions, and that, while the water ran through the house, it did not enter the building through any openings in the roof or walls made by the direct action of the wind, and that the loss and damage were not covered by the windstorm insurance. The defendant produced evidence showing that the water rushed down Ames avenue to the low place where this house was erected; that it carried cans, débris, and everything with it; that the water ran into the house and ran through it; that it came across the paved street as a column of water the width of the street, and eight or ten inches deep, rushed over the curb and sidewalk and into this house. It is claimed that, while the porch columns were broken loose at the bottom and left suspended, this was entirely the effect of the water. Defendant's evidence is that the roof could not have been raised up by the wind and settled back, for there is no sign of any cracking of the paint anywhere around the base of the roof, and the chimney going up through the center of the house was entirely intact, as shown by the evidence and the photographs introduced in evidence, the testimony indicating that it could not have been left intact if the roof had been raised up by the wind.

The testimony of a defendant's witness, who held an engineer's degree from the Worcester Polytechnic Institute in Massachusetts, was to the effect that the porch floor had settled where the understructure had been washed away by the water; that a water line appeared 22 inches above the floor of the lower apartment, showing that water had stood at that depth; that this volume of water was more than the joists could carry, and was the cause of the lower floor caving into the basement; that in his opinion the total amount of the damage that had been done by the wind was two or three broken window-glass; that there might have been slight damage to the roof on the north and east slopes by the hail, and that the damage by water could have occurred in five or ten minutes by the stream of water described by the witnesses striking the front of the house and washing out part of the retaining wall.

Another witness testified that he had lived across the street and in the same block from this house for about 28 years; that he was home at the time of the storm; that during the storm he did not notice that the wind was blowing very hard, and that the wind did not shake his house, nor affect his property any, but that after the rainstorm their basement was flooded with water to the depth of four or five feet, the water having come in the basement windows, which were 18 inches above the ground; that the big cottonwood tree leaned more to the east after the storm, and that this was the only damage that he observed done by the wind.

Another witness testified that her house is the next house on the same side of the street as the Parish property, with vacant lots between; that she was at home at the time of the storm; that the rain accompanied the storm as a cloudburst, and she saw the water rush across Ames avenue from the north side and rush through insured property; that tubs and other things were being washed out of the insured property; that the only damage done to her house by the wind was to an old chimney which had been plastered with cement, which cement was cracked.

Another woman testified that she was at home on the afternoon when the storm occurred; that the wind came, but did not shake nor damage their house, although the hail battered the paint some; that after a little lull the rain "poured just like the top of the heavens had dropped out;" that the water came down the alley in the back of their house from the north and west into their front yard; that their fence was soon jammed with brush, paper, rags, tin cans, and then the water flattened their fence and rushed into Ames avenue at a depth of three feet or more, went over the south curb, and into the front of the insured property.

Another neighbor living near-by testified that the wind did no damage to his house, nor to the back roof over the porch; that he saw water coming down the street to a depth of about two feet and rushing into the front of the insured house; that there were no trees blown down in that immediate vicinity by the wind.

A building contractor testified that he made an inspection of the property a week after the storm; that one could push the porch posts back and forth; that the lower floor had caved in; that there were sediment, grass, rocks and débris throughout the basement; that there was no evidence of water having gone through the roof, except some small spots in the ceiling of the upstairs apartment; that he had often made inspections during the 25 years that he had been a building contractor in Omaha, and that in his opinion the damage to the old composition roof which was over the shingles might have been caused by hail, and would not exceed $25; that the damage to the house had in his opinion been caused by the water.

It is argued by the defendant that the large double cottonwood tree, estimated to be 75 feet high, and very old, standing close to this insured house on a vacant lot, had none of its many branches injured by the wind. The rather light porch around the entrance to the lower apartment was not torn down by the wind, which all indicates that the wind was not very strong or destructive.

The examination of the photographs introduced in evidence shows clearly that the house is cracked and settled, the lower floor caved into the basement, and that the damage done to this house was of a serious nature, and of a very extensive character; but from the evidence in the case, as given by neighbors living in the immediate vicinity, and by construction engineers, we have reached the conclusion that the evidence will not support a verdict on the ground that the serious damage was caused by the wind or the hail, but, on the other hand, the enormous flood of water following this cloudburst practically ruined the house, and the insurance policy in this case does not provide insurance against such water damage, but is limited to fire, windstorm, cyclone, tornado, and hail.

We are cited to many cases by the plaintiff, especially that of *Jordan v. Iowa Mutual Tornado Ins. Co.,* 151 Ia. 73, 130 N. W. 177, in which it was held that, if a windstorm was the efficient cause of the loss of live stock covered by a policy insuring against loss by windstorm, the fact that other causes may have contributed to that loss does not relieve the insurer from liability. We admit this as a statement of the law, but the facts in the case at bar do not show that the severe gust of wind which came ahead of the rain was the efficient or adequate cause of the damage to the property in this case.

This court has held many times that the rule that a verdict will not be disturbed where there is some evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts of the case. *Dodds v. Omaha & C. B. Street R. Co.,* 104 Neb. 692, 178 N. W. 258.

"An insurance policy is a contract and, if couched in unambiguous and clear language, should be construed as other contracts." *Omar Baking Co. v. Employers Liability Assurance Corporation,* 130 Neb. 365, 264 N. W. 873. See, also, *Shambaugh v. Great Northern Life Ins. Co.,* 131 Neb. 415, 268 N. W. 288; *Rye v. New York Life Ins. Co.,* 88 Neb. 707, 130 N. W. 434.

Where the evidence is convincing that serious damage to

a dwelling occurred by a flood of rain-water rushing down the street to this lower place, and then from the paved street over the curb and sidewalk and into a house, and where an insurance policy insured such building against direct loss by windstorm and hail, and expressly exempted damage caused by rain, high water, overflow, or cloudburst, which did not enter the insured building through openings in the roof or walls made by the direct action of the wind, such damage is not covered by a policy against hail and windstorm. This is true because the natural and obvious meaning of the provisions of an insurance contract control, rather than a forced or strained construction. *Davis v. Aetna Life Ins. Co.*, 128 Neb. 154, 258 N. W. 58.

We have reached the conclusion that the testimony in this case, taken as a whole, including both that produced by the plaintiff as well as the defendant, does not support this verdict for the plaintiff, and that the verdict and judgment are contrary to the law of the case and cannot be sustained by the evidence, and the judgment of the trial court is hereby

REVERSED.