LESTER E. SHAMBLEN ET AL., APPELLEES, V. GREAT LAKES PIPE LINE COMPANY, A CORPORATION, APPELLANT.

64 N. W. 2d 728

Filed June 4, 1954. No. 33496.

*Smith & Smith,* for appellant.

*George M. Tunison, Thomas P. Leary, and Leary & Leary,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages based on a contract. Issues were made and trial had. The jury allowed specific amounts as damages to plaintiff on each of five items claimed.

This appeal questions the allowance of two of the five items of damages.

Defendant, by separate motions as to each item, presented the question of sufficiency of the evidence to sustain findings for the plaintiff. This was done by motions to strike the allegations from the petition and for dismissal of the claim or for a directed verdict made at the close of plaintiff's case in chief and at the close of the case. Defendant, after judgment was entered on the verdict, moved to set aside the rulings on the motions made at the close of all the evidence, and for an order sustaining the motions. In the alternative defendant moved for a new trial. The motions were overruled. Defendant appeals. One item of damages in the sum of $125, which the jury allowed, was deducted

from the amount of the verdict by the trial court. There is no error assigned as to that item. Two items in the sums of $160 and $375 are not challenged here. We reverse the judgment of the trial court and remand the cause with directions.

Plaintiffs are husband and wife and are the owners of farm land. For convenience we will refer to the plaintiff, meaning the husband, as he is the one testifying to the things herein recited. The defendant is the holder of a right-of-way agreement for pipelines across this land. One pipeline had been laid. Defendant in 1950 laid a second line across this land. This action arises out of that operation.

The agreement provides: "All damages to crops, surfaces, fences, or other improvements on said premises for and because of the laying of each line of pipe * * * shall be paid for as soon as said line or lines are completed." The contract further provided that the plaintiffs "* * * are to fully use and enjoy the said premises except the easement * * *."

For the purpose of these motions we state the evidence subject to the rule that plaintiff is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence.

Plaintiff's home buildings are located in the northeast part of the farm. He had a barn and feed lot in the southwest part of the farm. There was a private road leading from one set of improvements to the other. There was a privately owned power line running across the farm lands to these buildings in the southwest part of the farm and across the right-of-way of defendant. Plaintiff alleged that this line was torn down and completely destroyed by a truck operated by defendant's contractor. The jury allowed $1,200 damages for the loss of that power line.

The line was of insulated wire carried on poles. Plaintiff's evidence is that on April 9, 1950, employees

of the defendant came upon his property and staked out the route of the pipeline. On April 14 about 9 a. m. he went into the field across which this line runs and set corn stalks on fire. The stalks were dry and a nice breeze was blowing. He returned to his house. Probably about 12 noon or 1 p. m. he heard the noise of a truck down in that vicinity and "just figured it was somebody" from the pipeline company. He went down into the field about 2 p. m. and found the poles on each side of the road "where they would drive under the wire," "leaning," and "pulled to the south." The wire had been dragged to the south "just like they hooked it on the truck, or whatever the vehicle was," and "was just laying down in the field and the insulation was burned off." He further testified that he found dual-wheel truck tracks where "somebody had evidently come in from F Street" (to the north), "driven down this hill and evidently had hooked the two wires on something, I don't know what it was, and drug the wire down the hill * * * which tore about 1200 feet of that wire loose," and that the "truck" had gone further south, "turned around and come back out of the property" following the stakes for the pipeline. "* * * that might have been somebody else looking for their fence crew, I don't know who it was."

Prior to that time the only truck which defendant had had on plaintiff's land was a "pickup truck" that had been stopped, turned around, and driven out before it reached the point involved.

Plaintiff relies on the rule last stated in Koutsky v. Bowman, 157 Neb. 919, 62 N. W. 2d 114, which is: "Circumstantial evidence can be sufficient to sustain a verdict depending solely thereon for support if the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom."

The rule also is: "Where several inferences are de-

ducible from facts presented, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff does not sustain his position by a reliance alone on the inference which would entitle him to recover." Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624.

It is patent that this evidence is clearly insufficient to sustain a finding that a truck for which defendant was responsible entered plaintiff's property, struck the power line, and tore it down. Plaintiff's evidence is solely one of suspicion and conjecture. The trial court erred in not sustaining the several motions directed at this claim.

The next item of damages which the trial court submitted to the jury and upon which it allowed damages in the sum of $2,800 is referred to as the corn claim. In essence it is that because of defendant's operations on plaintiff's land, he was unable to plant corn on a part of his land until some time in June; that he then planted "90-day corn"; and that the production was less than corn normally planted and of poor quality. His claim is based on the allegation that "it was impossible to plant the field on the west side of the pipeline until June 13, 1950 because there was no way to move a tractor or machinery across the pipeline."

The plaintiff's evidence is that the normal time for starting to plant corn is May 15; that on May 16, 1950, he started planting corn on the south end of the farm; and that during that morning the defendant entered from the south and began placing pipe on the ground across his land, and completed laying the pipe across his land on May 17. The pipes were 13 to 14 inches in diameter and 30 feet long by plaintiff's evidence, and 40 feet long by defendant's evidence, and weighed approximately 1,680 pounds. They were strung out on top of the ground so as to form an unbroken line across his land. Defendant's evidence is that an opening was left at the field road and that the trench was filled in

at that point after the ditcher had gone across it. On May 26 the defendant entered and dug the trench across plaintiff's land, placing the backfill dirt to the west. This work was completed on May 28. On June 3, defendant made a crossing on the field road so that plaintiff could enter his west field. This was available for 2 hours and then was dug out. The trench was filled and he was able to cross to his west field for planting on June 13.

Plaintiff's buildings and machinery were on the east side of this line of pipe. The field where he claims he was unable to plant was on the west side. Plaintiff alleged that the line of pipe continuously blocked the road and blocked the moving of trucks, tractors, or other machinery into the fields west of the pipeline and that it was impossible to plant the field on the west side of the pipeline until June 13, 1950, because there was no way to move a tractor or machinery across the pipeline. The trial court submitted to the jury the issue of the inaccessibility of the land for seasonable planting of corn and also whether or not plaintiff could with "reasonable diligence" have had access to his field.

The established rule is: "Where two parties have made a contract which one of them has broken, the other must make reasonable exertions to render his injury as light as possible, and he cannot recover from the party breaking the contract damages which would have been avoided had he performed such duty." Uhlig v. Barnum, 43 Neb. 584, 61 N. W. 749. See, also, Marcell v. Midland Title Guarantee & Abstract Co., 112 Neb. 420, 199 N. W. 731.

The questions are—did the plaintiff prove inaccessibility, and if so, did he make reasonable exertions to render his injury as light as possible?

Plaintiff's testimony is that the average planting time would have been from 2 to 3 days but that normally 4 or 5 days might be required allowing for breakdowns and interference, and that if he had started on May 16,

1950, he could easily have finished planting by May 21. Plaintiff's testimony is that he asked defendant to move its pieces out of the way and give him access to the west field "for the first time" on May 28.

It appears from this testimony that plaintiff's access to his west field across his own land was not fully interfered with by the line of loose pipe until May 17, 1950. Thereafter it was not fully interfered with by the trench until May 28. During this period at least 10 days of normal planting season passed. It was not until "past the 1st of June" that it was too late to plant regular-type corn. Plaintiff did not undertake the reasonable exertion of pulling a length of pipe out of the way or building a dirt grade over a 14-inch diameter pipe. It was not until May 28 that he asked the defendant about a crossing to his west field. It was not until that time that the trench fully interfered with access to the west field.

A graveled highway runs along the north side of plaintiff's land. It is adjacent to the west field. It connects with a driveway into plaintiff's home buildings. Defendant cut an opening in plaintiff's fence along the north side of between 40 and 50 feet. This was the opening used by defendant to enter plaintiff's property from the north. According to plaintiff's testimony a ditch ran all the way down along the south side of this road. Plaintiff describes it as a "big ditch." The only evidence we find as to the depth of the ditch at this opening is that of the defendant that it was about 3 feet lower than the center line of the highway. Defendant used this entrance as a "highway" for constant traffic for small trucks, large trucks, and heavy equipment. Plaintiff's evidence is that defendant at all times entered to the east of the line of pipe. We find no evidence that defendant made any fill of the ditch at that point. Defendant's evidence is that it did not. This gate opened directly into plaintiff's west field.

Defendant, coming from the south, laid pipe toward

that gate and toward the approximate center of it. At that point there were three lengths of pipe laid side by side to be used under the F Street road. There is a dispute in the construction of the evidence as to whether these reached the fence line or were back from it a distance of 20 or 25 feet. In any event the pipe did not prevent access to the field so far as travel from F Street into the field on either side of the pipe is concerned. Plaintiff testified that up to the time the trench was dug there on May 28, 1950, "there was no ditching and no obstruction so far as this 40 or 50-foot gate was concerned." After the trench was dug the backfill dirt was west of the trench. It would interfere with passage, and require the removal of a bit more of fence. Plaintiff testified that the fence could have been cut along there anywhere as easily as defendant did it, and that there being a fence along there rather than a gate was immaterial. Plaintiff testified that he never made any attempt to make a crossing or to enter his west field from the F Street road. There is evidence that would sustain a finding of inaccessibility at the northwest corner of his land some distance to the west of the opening here discussed.

It is quite apparent that plaintiff could have entered and planted his west field from the F Street road, at any time, so far as defendant's operations are concerned, in part without any interference, and in part by the use of reasonable exertion. He did nothing in that regard.

In reaching this conclusion we have not overlooked the testimony of plaintiff's witness on rebuttal, Martin Bock, a neighbor to the west. This witness, as to F Street west from the pipeline to the corner, testified that "during the spring and summer of 1950" he could not have driven a tractor across there. He testified that he was the owner of and had driven a tractor. The question was asked as to what he, the witness, could do. An examination of the foundation questions asked shows that he had in mind an area further to the west where

there was a bank, a swampy place, and trees growing. We find no evidence of any witness that puts these obstructions in the area immediately to the west of the pipeline at F Street. He is not shown to have any knowledge of the condition of the road at the time here involved except as above stated. The value of the opinion of an expert witness is dependent on, and is no stronger than, the facts on which it is predicated. Williams v. Watson Bros. Transportation Co., 145 Neb. 466, 16 N. W. 2d 199.

Finally it developed in the evidence that there was a physical way of access to the west field by going west along the F Street road, then along a private driveway on the Bock land, and across a cultivated field where oats were growing. There had formerly been a road across the field at that point. There is a dispute in the evidence as to whether or not permission could have been had to enter by that way. However, plaintiff made no effort to secure permission or enter across the Bock land.

Resolving the controverted facts in plaintiff's favor, and giving him the benefit of every inference that can reasonably be deduced from the evidence, we find that plaintiff has not sustained his burden of proof that his west field was inaccessible for planting corn during the normal planting period. The evidence, so viewed, shows unimpeded access to this field through the F Street entrance at all times up to May 28, 1950. Likewise the evidence shows no effort to render his injury as light as possible. The trial court erred in not sustaining the motion made at the close of all the evidence in the case and that made after judgment.

In his original petition plaintiff alleged that he had ordered 80 head of cattle for delivery on or about April 15, 1950; and that he planned on feeding and selling them in July 1950. He further alleged that by reason of the destruction of the power line and the construction of the pipeline he had no practical access to his

feed lot for transportation of the cattle, or for watering, feeding, and caring for them. He sought the recovery of damages for loss of anticipated profits had he received and fed the cattle. Defendant moved to strike these allegations from the petition. The trial court sustained the motion. Later plaintiff moved to amend his petition by restoring these paragraphs. The trial court denied the motion. At the trial the plaintiff made an offer of proof of the above matters. The trial court sustained defendant's objections to this offer. Plaintiff cross-appeals, assigning these rulings as error. We see no necessity of determining procedural questions suggested by defendant.

Defendant here contracted to pay "All damages to crops, surfaces, fences, or other improvements on said premises for and because of the laying of each line of pipe * * *."

The damages recoverable under a contract for the payment of damages depend on the terms of the contract. Where a party contracts to pay certain specified damages he impliedly excludes all damages not so expressed unless a contrary intent is plainly indicated. This is but an application of the maxim that an expression of one thing is the exclusion of another, which we have followed. See, School District of Omaha v. Adams, 151 Neb. 741, 39 N. W. 2d 550; Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N. W. 2d 409. See, also, 17 C. J. S., Contracts, § 312, p. 730; 12 Am. Jur., Contracts, § 239, p. 765. This rule has been applied to contracts of the kind here involved. See, Fulkerson v. Great Lakes Pipe Line Co., 335 Mo. 1058, 75 S. W. 2d 844; Shell Pipe Line Corporation v. Coston (Tex. Civ. App.), 35 S. W. 2d 1056; O'Connor v. Great Lakes Pipe Line Co., 63 F. 2d 523.

We think it patent that defendant did not contract to pay damages for loss of profits on a prospective cattle-feeding operation. The trial court did not err in its

rulings on this matter. The cross-appeal is accordingly denied.

The judgment of the trial court is reversed and the cause is remanded with directions to sustain defendant's motions and to further reduce the amount of the verdict and judgment in the sums of $1,200 and $2,800. Stated otherwise, judgment is directed to be entered for the plaintiff in the sum of $535.

REVERSED AND REMANDED WITH DIRECTIONS.