RICHARD RAFF, APPELLEE, v. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, APPELLANT.

149 N. W. 2d 52

Filed March 3, 1967. No. 36436.

Jewell & Otte, for appellant.

Roscoe L. Rice and Frank Roubicek, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action to recover under the theft provision of an insurance policy issued by the defendant. Defendant moved for a directed verdict after the plaintiff had adduced his evidence. When the motion was overruled, defendant rested and again moved for a directed verdict. This motion was also overruled. The jury returned a verdict for the plaintiff. Defendant filed a motion for judgment notwithstanding the verdict, and after it was overruled perfected an appeal to this court.

Plaintiff purchased an insurance policy for ranchers and farmers issued by the defendant. It is a limited policy. The provisions material to this risk are as follows: "(f) Theft and overturn. This insurance is extended to include direct loss by theft (but excluding escape, mysterious disappearance, inventory shortages, wrongful conversion and embezzlement), and overturn. In the event of loss by theft, the insured shall give immediate notice to the nearest law enforcement officer, but shall not, except at his own cost, offer to pay any reward for recovery."

Plaintiff operates a 480-acre farm in Knox County, consisting of 180 acres of farm land and 300 acres of

rough land. There are two creeks across the farm which join the Verdigre Creek a mile from the plaintiff's farm. During April 1965, plaintiff owned 60 hogs which he kept during the night in a hog-tight pen on the premises. During the day he allowed the hogs to range out in an adjoining cornfield which was not hog tight.

On Sunday evening, April 25, 1965, when plaintiff and his family returned to the farm, he went to pen up the hogs and noticed that several seemed to be missing, but did not count them. The next morning, he determined that 24 hogs were missing. During the following week plaintiff, when he could spare the time, hunted for the hogs by looking around the farm, by walking up and down the creeks, and by visiting some of the neighbors. He found some tracks by the creek where the hogs had rooted, but was unable to follow them.

The Sunday after the disappearance of the hogs, two of them returned. The next day, May 3, 1965, he attempted to follow the tracks made by the returned hogs. While doing so, he heard a tractor on the other side of the hill. The operator, a neighbor, Vince Cihlar, told him that some hogs had come to his farm and, believing they belonged to Harold Effle, his neighbor, he had called Effle to come and get them. Effle, after starting home with the hogs, determined they were not his and abandoned them at a bridge near his farm. Effle lives about a mile across the creek from the plaintiff's place. The plaintiff did not report the disappearance of the hogs to the sheriff until May 4, nor to the insurance company until May 5.

Plaintiff could not find any hog tracks near the bridge where the hogs were last seen. He did not look, however, until several days after the hogs disappeared. Plaintiff was also unable to find any evidence of vehicle tracks in the vicinity of the bridge or on his premises where hogs could have been loaded.

The policy in question provides for immediate notice of any loss to the nearest law enforcement officer as

well as immediate written notice to the company. The answer of the defendant denied liability because any loss sustained by the plaintiff was not within the coverage of the policy, and for the further reasons that the plaintiff did not submit a proof of loss within the period provided by the policy and did not immediately report the alleged loss to the nearest law enforcement officer.

For purposes of a decision herein, the only question we need to consider is the sufficiency of the evidence to present a jury question.

In popular usage, the word "theft" is another name for "larceny." As a general rule, however, the term as used in an insurance policy is not necessarily synonymous with larceny, but may have a much broader and more inclusive meaning. It could cover pilferage, swindling, embezzlement, conversion, and other unlawful appropriations as well as larceny. Here, however, it is apparent that the term is used in a much more restricted sense than is usually the case. While it is not necessary to arrive at a precise definition herein, it is evident "theft" must be construed to mean something other than escape, mysterious disappearance, inventory shortage, wrongful conversion, or embezzlement, because these are specific exclusions in the policy.

"Escape" is defined in Black's Law Dictionary (4th Ed.), p. 639, as a flight from custody. In Webster's New International Dictionary (2d Ed.), Unabridged, p. 871, the word "escape" is defined as: "To get away * * *; to break away, get free, or get clear * * *." As used in this policy pertaining to livestock, "escape" must be construed to mean straying from or leaving the place of confinement.

"Mysterious disappearance," under the terms of a theft policy, has been defined as disappearance under unknown, puzzling, and baffling circumstances which arouse wonder, curiousity, or speculation, or under circumstances which are difficult or hard to explain. Conlin v. Dakota Fire Ins. Co. (N. D.), 126 N. W. 2d 421.

The term "inventory shortage" involves an unexplained inventory shrinkage, and need not be considered further herein.

We have defined "conversion" as any unauthorized act which deprives the owner of his property. Mapledge Corp. v. Coker, 167 Neb. 420, 93 N. W. 2d 369. We assume herein, however, that "unlawful conversion" as used in the policy presupposes the converting of a lawful possession into an unlawful one.

"Embezzlement" is a statutory crime and is defined by section 28-538, R. R. S. 1943. Substantially, it is the appropriation of property to his own use by someone to whom it has been entrusted.

Under the evidence adduced by plaintiff, we must conclude that the hogs originally strayed, or, within the policy, escaped from the cornfield. They reached the Cihlar farm, which is some undetermined distance across the hill from the plaintiff's farm. They were then driven from the Cihlar farm by Effle and abandoned near his premises when he determined that they were not his hogs. Except for two of them, from the point of abandonment they mysteriously disappear. Neither Cihlar nor Effle was called as a witness. The sheriff testified his investigation disclosed that Effle abandoned the hogs at the bridge near his premises. On cross-examination he testified that he inspected the Effle hogs and that none of them answered the description of the missing hogs.

On this state of the record, did the plaintiff adduce sufficient evidence to warrant the submission of the case to the jury? The thrust of the plaintiff's argument is that because Effle was the person who had last seen the hogs, the jury could draw an inference that he is the person responsible for the theft. Effle was not called as a witness. His statement is in the record as a part of the investigation of the sheriff who was called by the plaintiff. The sheriff testified that he checked the Effle farm and the hogs were not there. He also checked

the sales barns and could find no evidence that the missing hogs had been sold. He further testified on cross-examination that he could find no evidence that the hogs were stolen. To indulge the presumption on this record that because the hogs cannot be traced from the bridge, a theft within the terms of the policy must have resulted, is to grant relief solely on the basis of speculation and conjecture.

It is a common experience in this state for stray livestock to be confined until the owner can be located. Two of the hogs returned a week after they "escaped." It is entirely possible the remainder continued to stray until someone penned them up waiting for the owner to claim them. This would not be an unlawful act. They could later have been wrongfully converted. The hogs were mixed breeds and had no distinguishing marks. After a short period of time, it is doubtful if even the owner could have recognized them. The mere fact plaintiff did not find the hogs does not prove they were stolen within the terms of the policy. The record herein does not indicate a particularly exhaustive search to discover the whereabouts of the missing hogs. The plaintiff did search up and down the creek, but no distances are given. He did visit with six or seven neighbors. The hogs had been gone for 9 days before the loss was reported to the sheriff.

Plaintiff may establish his case by circumstantial evidence as well as by direct evidence, yet circumstantial evidence is not sufficient to sustain a verdict unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom. Popken v. Farmers Mutual Home Ins. Co., 180 Neb. 250, 142 N. W. 2d 309. Or, to phrase it differently, the evidence must be sufficient to make the theory of causation reasonably probable and not merely possible. Conjecture, speculation, or choice of possibilities is not proof. There must be

something more which will lead a reasoning mind to one conclusion rather than another. In the instant case, the most plausible conclusion brings the loss of the hogs herein within the exclusions of the policy.

In every jury trial, before the case is submitted there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed. Weston v. Gold & Co., 167 Neb. 692, 94 N. W. 2d 380.

The motion for a directed verdict at the conclusion of the plaintiff's case raised the question as to the sufficiency of the evidence and should have been sustained.

For the reasons given, the judgment herein is reversed and the cause is dismissed.

REVERSED AND DISMISSED.