Jack **WILEY**, Appellee,

v.

**UNITED FIRE & CASUALTY COMPANY,**
Appellant.

No. 56498.

Supreme Court of Iowa.

July 31, 1974.

C. W. Carlberg, Greenfield, for appellant.

Jerrold B. Oliver of Webster, Jordan & Oliver, Winterset, for appellee.

Heard by MOORE, C. J., and Le-GRAND, REYNOLDSON, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant United Fire & Casualty Company appeals a $2100 judgment entered for plaintiff Jack Wiley on a jury verdict for livestock loss under the theft coverage of his insurance policy. The main question is the sufficiency of evidence to support the verdict. We affirm.

Principles applicable to our review are well settled. We view the evidence in its light most favorable to the jury verdict. We are bound by the verdict if it is supported by substantial evidence. Burton v. Theobold, 216 N.W.2d 299, 300 (Iowa 1974). Where circumstantial evidence is relied on, it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence; however, it is generally for the trier of fact to say whether circumstantial evidence meets this test.

In this case we recite the facts as the jury could have found them. Plaintiff had

a farm about 12 miles south of Winterset. It was located at the south end of a one-fourth mile dead-end county road. The house on the farm was vacant, but during the winter and spring of 1972 plaintiff kept 170 head of cattle and 162 hogs on the premises. The livestock were kept within fences which were all in good condition. Their feedlots were adjacent to a barn used by the hogs. There was a loading chute on the opposite side of the barn which could be reached from the road without opening any gates or fences. The chute had an unlocked sliding gate. No gates on the farm were locked.

Except for some baby pigs which got out in 1970, plaintiff never had any livestock escape confinement. In the 1970 incident he found the baby pigs on the road and returned them to the feedlot. Neighbors never observed any of plaintiff's animals out.

Plaintiff visited the premises daily to inspect and feed the animals. He fed the cattle from a truck and drove various vehicles on the premises. The ground was covered by many tire tracks. Plaintiff's visits were during daylight hours. When he sold animals he removed them from the premises before midafternoon.

The livestock were counted on somewhat less than a monthly basis. The hogs had been counted in February and the cattle had been counted in March. As the hogs reached market weight plaintiff started selling them in groups. In late April or early May 1972, when he should have had 62 hogs left, he counted only 52. He was also selling cattle in groups. On about May 6, 1972, when he should have had 26 two year old black angus heifers left, including one which belonged to a neighbor, he counted only 21.

Plaintiff checked with all neighbors in the vicinity and could not find the missing livestock. One neighbor, Fern Berry, lived on the north side of the T-intersection of the north end of the dead-end road and an east-west county road. She could see the road to plaintiff's farm from her house. After dark on April 28, 1972, she had observed a large straight truck coming out of plaintiff's building site. She was attracted to it when its lights were turned on while it was proceeding north. When it reached the intersection she could see it had a dark cab and a red box with some white on it. The truck turned east and was shifted down twice to traverse a small grade. She believed the truck was loaded but did not see or hear livestock. She had never seen the truck at plaintiff's premises before. Two or three nights later Mrs. Berry saw an unfamiliar loaded white pickup truck come out of the premises. She told plaintiff what she had seen. No one with trucks like those observed by Mrs. Berry was authorized to be on plaintiff's farm.

Plaintiff reported his livestock loss to the sheriff and to his insurance agent on May 9, 1973. He gave a written statement to defendant's adjuster on May 31, 1972. A deputy sheriff was unable to find any trace of the missing animals or any physical evidence of theft. He testified there had been frequent complaints of stolen livestock in the area. Two calves stolen from a neighbor had been recovered.

The five missing cattle had a value of $300 each, and the ten missing hogs had a value of $60 each.

It is undisputed that defendant insured plaintiff against loss of livestock by theft. In relevant part the policy defined theft as "any act of stealing or attempt thereat * * *." Although the policy contained exclusions, defendant did not plead them and they are not involved.

I. *Sufficiency of the evidence.* The determinative question is whether there was substantial evidence of theft.

We can put aside the issue of credibility. That issue was for the jury. The jury could find plaintiff lost the cattle and hogs when he said he did. But did he produce sufficient evidence for the jury to find they had been stolen?

In Long v. Glidden Mutual Insurance Association, 215 N.W.2d 271, 273 (Iowa 1974), we said:

"Proof of theft requires more than proof of mere disappearance. But an inference of theft is justified when property disappears without the knowledge or authority of its owner in circumstances tending to show it was not accidentally mislaid or lost and did not stray by itself."

We also said absence of direct evidence or physical indicia of theft does not preclude a finding of theft when the trier of fact could find from circumstantial evidence that theft was reasonably probable, and more probable than any other theory based on the evidence.

We believe there was sufficient evidence for the jury to find the loss was caused by theft in this case.

Two cases relied on by defendant are distinguishable. Once is Raff v. Farm Bureau Insurance Co. of Nebraska, 181 Neb. 444, 149 N.W.2d 52 (1967). In that case a farmer allowed his hogs to range in a corn field which was not hog tight. Twenty-four of them strayed away. He was able to follow tracks for some distance. A week later two of them returned. A neighbor had seen the others at his farm and had called another neighbor, one Effle, thinking they were his. Effle started home with the hogs but abandoned them near his farm when he determined they were not his. They were not thereafter found. The court held the mere fact they were not found did not prove they were stolen.

In contrast to these facts, the jury could find the livestock did not stray in the present case but were removed by human intervention. The Raff case does not support defendant's position.

The other case is Gifford v. M.F.A. Insurance Company, 437 S.W.2d 714 (Mo. App.1969). In that case the plaintiff was in the business of pasturing, feeding and caring for cattle owned by others. He had 450 head of cattle in various pastures on over 1300 acres of leased land. Eighteen cattle were discovered missing. Plaintiff asserted the fences were intact and it was uncommon for cattle to stray although it had happened before. The case was tried to the court, and the trial court held for the defendant insurer. Under Missouri practice, when the court of appeals reviews a case tried to the court with jury waived, it reviews the evidence as in an equity appeal, making its own determinations of fact. H. & H. Manufacturing Co. v. Cimarron Insurance Co., 302 S.W.2d 39, 42 (Mo.App. 1957). The court of appeals held plaintiff had not carried his burden to prove the cattle had been stolen. The policy contained a mysterious disappearance exclusion which the court in its de novo review held was proven as part of plaintiff's own evidence.

In contrast, we have stronger evidence of theft, especially in the testimony of Mrs. Berry, and a mysterious disappearance exclusion is not involved. We also have a finding of fact of theft by the trier of fact. Unlike the Missouri appellate court we do not decide the facts anew. In a law action like this we are bound by trial level findings of fact based on substantial evidence. The verdict finding theft in this case is supported by substantial evidence.

II. *Adequacy of plaintiff's proof of loss.* Defendant also asserts a policy defense based on alleged failure of plaintiff to furnish timely proof of loss. Although this issue was raised in the pleadings, it was not raised at trial. There was evidence from which the trier of fact could have found substantial compliance with this policy provision. See Henschel v. Hawkeye-Security Insurance Company, 178 N.W.2d 409 (Iowa 1970). Defendant did not except to trial court's failure to submit the issue to the jury. The issue cannot be raised for the first time on appeal. Galbraith v. George, 217 N.W.2d 598, 602 (Iowa 1974).

Plaintiff's judgment must stand.

Affirmed.