WARD CATTLE CO., A NEBRASKA CORPORATION, APPELLANT, V.
FARM BUREAU INSURANCE COMPANY OF NEBRASKA, APPELLEE.
388 N.W.2d 89

Filed June 6, 1986.   No. 85-330.

Daniel E. Bryan of Heinisch & Bryan Law Office, for appellant.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Plaintiff-appellant, Ward Cattle Co. (Ward), brought this action to recover $7,200 under the theft provision of an insurance policy issued by the defendant-appellee, Farm Bureau Insurance Company of Nebraska. After a trial without a jury on November 19, 1984, the Fillmore County Court found that Ward's loss of 12 heifers was the result of theft and that the exemptions in the policy which foreclose recovery for losses due to escape, mysterious disappearance, inventory shortages, or wrongful conversion were not applicable. The county court awarded Ward $7,200 plus court costs and an attorney fee of $2,000.

Farm Bureau appealed, and in a journal entry dated April 30, 1985, the Fillmore County District Court reversed the decision, holding that evidence of theft was insufficient as a matter of law and that, consequently, the plaintiff had failed to establish a prima facie case. Ward appealed to this court. We affirm.

Ward is a family corporation engaged in the business of farming and cattle feeding. Donald Ward is president of the corporation, and his wife, Shirley, is secretary. The Wards' son, John, is the vice president, and he and his wife, Barbara, live on the corporate farmstead. On November 6, 1980, Ward purchased 91 head of crossbred Hereford heifers. The cattle were delivered to the Ward farm and placed in a holding pen adjacent to a pen designated in the record as pen No. 2. The heifers remained in the holding pen, which was located approximately 100 feet from John and Barbara Ward's home. To the east of pen No. 2 was an enclosed stubble cornfield containing 260 steers. To the northwest of the holding pen was a loading chute, the gates of which were unlocked. Both pen No. 2 and the stubble field and pen No. 2 and the holding pen were separated by wire mesh fences.

On the morning of November 14, 1981, the Wards discovered that 16 of the 91 heifers were missing from the holding pen. John Ward testified that on the night of November 13, 1981, between 10 and 11 p.m., a disturbance had occurred in the holding pen: "I heard some commotion and I just looked out the window and I [saw] some dirt in the air and the cattle running up the hill side in Pen No. 2." Ward testified that he ran from the house to close an open gate that led to the stubble field.

The following morning, John Ward and his father did a head count of the heifers, some of which were now mixed in with the steers, and discovered that 16 were missing. No steers were missing. The Wards immediately notified the local sheriff and their Farm Bureau agent, and both investigated the incident. Evidence adduced at trial revealed that the entire 80-acre farmstead was fenced. These fences were all intact, with no signs of damage, uprooting, or cutting. The authorities also found no cattle tracks or droppings directly outside the

perimeter fence, on adjacent county roads, or in surrounding ditches.

The investigation revealed, however, that the fences surrounding the holding pen had been damaged. The posts were broken, and two lengths of the mesh fence were flattened. None of the wires had been cut or the posts uprooted. The record further indicates that a crushed rock driveway approximately 500 feet in length runs from a county road to the loading chute. John Ward testified that the house is about 30 feet north of the driveway and that generally he can hear when vehicles are using the driveway. None of the parties investigating the incident saw any tire tracks, hoofprints, or cut fences in the area of the loading chute. The sheriff also verified with local sale barns that no heifers similar to Ward's had been recently sold or listed.

Donald Ward placed an ad in the Geneva, Nebraska, newspaper on November 20, 1980, stating that Ward Cattle Co. had "lost" 16 heifers. He did not receive any responses to the ad, but approximately 2 weeks later four of the heifers were located at a neighboring farm some 5 miles east of Wards' farmstead. How the four heifers found their way to the neighboring farm is not revealed in the record, but they were eventually returned to the Wards.

Ward filed a claim with Farm Bureau for the remaining 12 missing heifers. Farm Bureau denied the claim, alleging that Ward's loss was not within the coverage of the policy. At trial in the subsequent lawsuit, the defendant offered no evidence except through cross-examination of the plaintiff's witnesses. At the close of the plaintiff's case, Farm Bureau rested, and the county court subsequently ruled in the plaintiff's favor. The district court reversed, holding that under our decision in *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985), the plaintiff had failed to establish a prima facie case of theft.

The dispositive question is whether sufficient evidence existed to support the county court's judgment. The judgment of a trial court as the finder of fact is equivalent to a jury verdict and will not be set aside unless clearly wrong. *West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 341 N.W.2d 588 (1983); *Studley v. School Dist. No. 38*, 210 Neb. 669, 316

N.W.2d 603 (1982). The reviewing court considers the evidence in the light most favorable to the successful party and gives that party the benefit of all reasonable inferences to be drawn from the evidence. *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982).

We agree with the district court that the plaintiff's evidence failed to support a prima facie case of theft which would entitle it to coverage under the insurance policy. The theft provision of Ward's insurance contract states: "1. Theft. This insurance is extended to include direct loss by theft (but excluding escape, mysterious disappearance, inventory shortages, wrongful conversion and embezzlement). . . . (1) Any direct losses by theft shall be construed to include only losses where clear and satisfactory evidence is established regarding the theft."

In *Raff v. Farm Bureau Ins. Co.*, 181 Neb. 444, 149 N.W.2d 52 (1967), we explained in some detail the meaning of policy terms identical to these. We stated:

> In popular usage, the word "theft" is another name for "larceny." As a general rule, however, the term as used in an insurance policy is not necessarily synonymous with larceny, but may have a much broader and more inclusive meaning. It could cover pilferage, swindling, embezzlement, conversion, and other unlawful appropriations as well as larceny. Here, however, it is apparent that the term is used in a much more restricted sense than is usually the case. While it is not necessary to arrive at a precise definition herein, *it is evident "theft" must be construed to mean something other than escape, mysterious disappearance, inventory shortage, wrongful conversion, or embezzlement*, because these are specific exclusions in the policy.

> "Escape" is defined in Black's Law Dictionary (4th Ed.), p. 639, as a flight from custody. In Webster's New International Dictionary (2d Ed.), Unabridged, p. 871, the word "escape" is defined as: "To get away * * *; to break away, get free, or get clear * * *." As used in this policy pertaining to livestock, "escape" must be construed to mean straying from or leaving the place of confinement.

"Mysterious disappearance," under the terms of a theft policy, has been defined as disappearance under unknown, puzzling, and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult or hard to explain.

(Emphasis supplied.) (Citation omitted.) 181 Neb. at 447, 149 N.W.2d at 55.

In *Anderson v. Farm Bureau Ins. Co., supra,* and in *Popken v. Farmers Mutual Home Ins. Co.,* 180 Neb. 250, 142 N.W.2d 309 (1966), we held that a plaintiff may establish its case by direct or circumstantial evidence. However, circumstantial evidence alone is insufficient to sustain a verdict unless the circumstances proved by the evidence are "of such nature and so related to each other that the conclusion reached . . . is the only one that can fairly and reasonably be drawn . . . ." We went on to say that the evidence must be such as to make "the plaintiffs' theory of causation reasonably probable, not merely possible. . . . Conjecture, speculation, or choice of quantitative possibilities [is] not proof. There must be something more which would lead a reasoning mind to one conclusion rather than to the other." 180 Neb. at 255, 142 N.W.2d at 313.

Where several inferences are deducible from the facts presented, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff does not sustain its position by a reliance alone on the inferences which would entitle it to recover. *Anderson v. Farm Bureau Ins. Co.,* 219 Neb. 1, 360 N.W.2d 488 (1985); *Shamblen v. Great Lakes Pipe Line Co.,* 158 Neb. 752, 64 N.W.2d 728 (1954).

Using these standards, we conclude that the plaintiff has failed to meet its burden of proof in this case. Although an inference of theft is possible, it is not the only conclusion that could reasonably be drawn from the evidence. For example, no one could explain how the heifers were physically removed from the holding pen. John Ward testified that he could generally hear vehicles using the crushed rock driveway. He also testified that in order to use the loading chute by the holding pen, it would be necessary to use a semi or a large farm truck because of the height of the chute. He admitted that either vehicle would make a "pretty fair amount of noise."

Additionally, there was no evidence of unusual tire tracks or cattle droppings around the loading chute.

Even more mysterious is how four of the missing heifers reappeared at a neighboring farm. The Wards testified only that they did not know how the cattle came to be at their neighbor's farm 2 weeks after the incident. The neighbor's farm is located to the east of the Ward farm, the direction John Ward testified he saw the heifers running on the night of November 13. Another unanswered question is why, if the heifers were stolen, were the holding pen fences flattened, not cut or uprooted, as if, as Donald Ward testified, the cattle had run through them?

Neither the Wards nor any of their witnesses could offer physical evidence establishing how the cattle were stolen. At best, the evidence goes no further than supporting a number of inconsistent inferences as to how the animals vanished.

AFFIRMED.

WHITE, J., participating on briefs.

KRIVOSHA, C.J., concurring in the result.

For reasons more specifically set out in my separate concurrences in *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985), and *In re Estate of Price, ante* p. 12, 388 N.W.2d 72 (1986), I concur in the result reached in this case. This is an example of a case where we have combined two rules which are, in my view, inconsistent. The majority first says that "circumstantial evidence alone is insufficient to sustain a verdict unless the circumstances proved by the evidence are 'of such nature and so related to each other that the conclusion reached . . . is the *only one* that can fairly and reasonably be drawn . . . .' " (Emphasis supplied.) Having said that, the majority then says: "[T]he evidence must be such as to make 'the plaintiffs' theory of causation *reasonably probable,* not merely possible. . . . There must be something more which would lead a reasoning mind to one conclusion rather than to the other.' " (Emphasis supplied.) It is inconsistent to, on the one hand, hold that the evidence must be such that only one conclusion can be reached and, at the same time, on the other hand, hold that there "must be something more which would lead a reasoning mind to one conclusion rather than to the

other." If something is the "only" conclusion which can be reached, it can never be the better of two possibilities.

SHANAHAN, J., joins in this concurrence.