INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Plaintiff and Appellee,

v.

Sandy L. SCHULTZ and Allan H. Schultz, Defendants and Third Party Plaintiffs and Appellants,

v.

STOUDT'S INSURANCE AGENCY, INC., Third Party Defendant.

No. 16433.

Supreme Court of South Dakota.

Argued April 24, 1989.

Decided June 14, 1989.

Scott K. Bradshaw of Aho & Bradshaw, Brookings (Ronald C. Aho of Aho & Bradshaw, Brookings, on brief), for defendants, third party plaintiffs, and appellants.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for plaintiff and appellee.

SABERS, Justice.

Sandy and Allan Schultz (Insureds) appeal an adverse judgment on a claimed loss of 917 hogs under the theft clause of a commercial farm policy with Insurance Company of North America (INA).

### Facts

Insureds were brothers who began raising hogs together in 1974. They developed a hog confinement system to raise the hogs. The hogs were farrowed on Sandy's farm. Shortly after weaning, the hogs were moved a mile and one-half to Allan's farm. They were counted and placed in a grower building. The grower building contained pens which gradually increased in size from one end of the building to the other. The hogs were placed in the small pens and moved to the far end of the building as they grew. Upon reaching 100 to 150 pounds, the hogs were moved to a finishing building also located on Allan's farm. They remained in the finishing building until they reached market weight of 220 pounds. Insureds would jointly decide when a load was ready for market. The hogs were taken to market in Sandy's truck, which held approximately 30 hogs. Insureds would receive separate checks in equal amounts from the sale of each load of hogs.

Insureds kept fairly detailed records of their hog operation. These records included the number of hogs weaned, death loss, and number of hogs sold per year. Insureds also maintained annual feed records. At the end of each year, Insureds took an inventory of all hogs.

At the end of 1984, Sandy's wife, who did the books for the operation, concluded that the operation was substantially short on income from hogs sold during the year. She had mentioned to Sandy on more than one occasion during the year that she believed they were short on hogs. However, Sandy did not pursue his wife's concerns. Insureds conducted a year-end inventory for 1984 and determined a number of hogs were missing. Sandy contacted the local INA agent and reported that as many as 1,000 hogs were missing. He did not object to the agent's report of a 500 head loss. Allan contacted Kingsbury County Deputy Sheriff James Lentsch (Lentsch) and reported a loss of approximately 400 to 500 hogs. Lentsch came to Allan's farm after the report to interview Insureds and inspect the premises.

During a second interview with Lentsch and Jerry Lindberg (Lindberg), a DCI agent, Insureds reported a loss of 1,024 weaning hogs in the range of 40 to 60 pounds. It was also reported to the officers at this time that Allan's dog disap-

peared in May of 1984. Insureds eventually claimed that 917 market weight hogs were stolen from Allan's farm. This was the loss claimed at trial. This figure was based on a comparison of the 1983 and 1984 records. These records showed that Insureds weaned 1,689 hogs in 1983 and 1,775 hogs in 1984. Insureds made 48 trips to sell hogs in 1983 and sold 1,483. Insureds made 28 trips to sell hogs in 1984 and sold 840. The records showed that the death rate and feed consumption for both years was approximately the same.[1]

No evidence of theft was found on Allan's farm. However, the doors and windows in the confinement buildings on Allan's farm were not locked. Despite the number of hogs allegedly stolen, Insureds did not report any unusual occurrences on Allan's farm during this time. In addition, neither noticed a dwindling number of hogs, nor that they were selling fewer hogs or bringing in less income. Sandy testified at trial that they believed the hogs were stolen over a period from April through December of 1984. He testified that as many as ten or more thefts may have occurred over this time period. He conceded that it would have taken several double-deck trailer loads to accomplish these thefts.

Allan lived with his wife and three school age children on the farm. They did not see any strange vehicles on their farm. The only regularly established time that Allan and all his family were absent from the farm was to attend church on Sundays between 9:00 a.m. and 12:00 p.m. No one in the area reported seeing any strange trucks or vehicles on Allan's farm. Law enforcement officers checked area sale barns and found no evidence of the sale of the missing hogs. The only other reported theft of hogs in the area during this time was an alleged theft of six pigs, their litters, and a boar from a farm approximately ten miles from Allan's. The law enforcement officers testified that they had never investigated a loss of the magnitude claimed by Insureds.

Sometime after the investigation began, Sandy accused the officers of complicity and incompetency in investigating the theft. These accusations were made after Lindberg told Sandy that he believed Allan was involved in the thefts. Sandy demanded that the investigation cease and told Lindberg that he would not cooperate with them even if they discovered who took the hogs.

INA filed a declaratory judgment action against Insureds to determine coverage under the policy. Insureds answered and counterclaimed against INA. The counterclaim alleged that the theft of 917 hogs, valued at approximately $64,000, was covered under the policy with INA.[2] A court trial was held on July 13, 1988. The trial court denied the claim, finding that the Insureds failed to produce sufficient evidence of theft.[3] Insureds appeal. We affirm.

*Sufficiency of the evidence for theft.*

Insureds claim that the trial court erred in finding insufficient evidence to establish the loss of hogs by theft. They also claim the trial court improperly placed the burden of proving the loss on them. Insureds argue that the court should have required INA to prove the applicability of the exclusion for mysterious disappearance.

The policy in effect during 1984 provided in pertinent part:

---

1. Insureds determined the actual number lost by adding the 1983 year-end inventory of 1199 with the number of hogs weaned in 1984 for a total of 2974. From this number Insureds subtracted the 840 hogs sold, the 53 hogs lost due to death, and the 1984 year-end inventory of 1164. These calculations accounted for the claimed loss of 917.

2. Insureds also served a third party complaint on Stoudt's Insurance Agency. The complaint alleged Stoudt's failed to procure proper coverage for the loss of livestock by theft in violation of the agreement between Insureds and Stoudt's. The parties stipulated to postpone the third party action pending the outcome of this action.

3. The court also denied Insureds' claim for attorney's fees for vexatious failure to pay, which issue is not appealed.

PERILS INSURED AGAINST

.    .    .    .    .

THEFT or attempt thereat, including damage to the property covered, larceny, burglary and robbery....

This policy excludes loss by theft, as defined above: ...

> 7. ... by escape, mysterious disappearance or unaccountable shortage.

■ The burden of proving theft under a policy of insurance is on the insured. *Ward Cattle Co. v. Farm Bureau Ins. Co.,* 223 Neb. 69, 388 N.W.2d 89 (1986); *Anderson v. Farm Bureau Ins. Co. of Nebraska,* 219 Neb. 1, 360 N.W.2d 488 (1985); *Benson v. Bradford Mutual Fire Ins. Corp.,* 121 Ill.App.3d 500, 76 Ill.Dec. 774, 459 N.E.2d 689 (1984); *Wiley v. United Fire & Casualty Co.,* 220 N.W.2d 635 (Iowa 1974); *Long v. Glidden Mutual Ins. Association,* 215 N.W.2d 271 (Iowa 1974); *Gifford v. M.F.A. Mutual Ins. Co.,* 437 S.W.2d 714 (Mo.Ct.App.1969); 21 Appleman, *Insurance Law and Practice* § 12238 (1980). The insured also has the burden to prove the amount and value of the property stolen. *Coastal Plains Feeders, Inc. v. Hartford Fire Ins. Co.,* 545 F.2d 448 (5th Cir.1977). Once a plaintiff has established a prima facie case of theft, the insurer has the burden to prove the mysterious disappearance exclusion. *Ward, supra;* Appleman, *supra.*

■ An insured may present circumstantial evidence of theft to establish a prima facie case. *Ward, supra; Wiley, supra; Baugher v. Hartford Fire Ins. Co.,* 214 Kan. 891, 522 P.2d 401 (1974). To present sufficient circumstantial evidence of theft under a policy, the insured must present evidence which raises more than a possibility or speculation that a theft has occurred. *Anderson, supra; Lovas v. St. Paul Ins. Co.,* 240 N.W.2d 53 (N.D.1976); *Wiley, supra.* As stated in *Wiley:*

> Where circumstantial evidence is relied on, it must be sufficient to make the theory asserted reasonably probable, not merely possible, and more probable than any other theory based on such evidence;

however, *it is generally for the trier of fact to say whether circumstantial evidence meets this test.* (emphasis added). *Id.* at 635.

At most, the circumstantial evidence presented by Insureds creates a possibility that a theft occurred. Insureds present several cases in which courts found circumstantial evidence sufficient to show theft of livestock.[4] However, these cases are easily distinguished in that in each case the fact finder found that a theft occurred. Thus, the respective appellate courts properly gave deference to the findings of theft. In addition, each case involved greater evidence of theft and none involved a theft of the magnitude claimed in this case. Here, the trial court stated:

> After reviewing all of the evidence, including the deposition of Allan Schultz, this Court feels that there is insufficient evidence to show that a theft has occurred. The evidence perhaps reflects that there are some hogs missing, but even that is speculative with respect to the number and the size. If 917 hogs were in fact missing then this would mean an average of 102 pigs [lost] per month without any realization by either Defendant. There was no realization of selling any less hogs, ... less income, [not] going to the market as often as before. There is no evidence of any unfamiliar trucks or other logical signs of theft.

We cannot say the trial court erred in finding insufficient evidence of theft. Because Insureds failed to present sufficient evidence of theft under the policy, the burden did not shift to INA to prove the exclusion for mysterious disappearance. Therefore, the findings of fact are not clearly erroneous and the conclusions of law are correct. SDCL 15–6–52(a).

Affirmed.

All the Justices concur.

---

**4.** *Coastal Plains Feeders, supra; Lovas, supra;*      *Baugher, supra; Wiley, supra.*