CALDWELL *v.* ST. PAUL MERCURY-INDEMNITY COMPANY.

Division B. Dec. 18, 1950.

No. 37699 (49 So. (2d) 570)

Chill, Landman & Gordon and Marvin A. Cohen, for appellant.

Lipscomb & Ray, for appellee.

324

**Ethridge, C.**

This is a suit by appellant, Jack I. Caldwell, against appellee, St. Paul Mercury & Indemnity Company, on a theft insurance policy for the loss by theft of a diamond from a ring of appellant's wife.

On September 25, 1947, a diamond disappeared from a ring on Mrs. Caldwell's hand. She testified that she had the ring on her finger with the stone in it about seven o'clock that night, while she was sitting in the living room of their home with her daughters, the youngest of whom was fifteen years, but at about nine or nine-thirty, before she started to go to bed, she noticed that the stone was missing. She and her children looked for it in the house that Thursday night, but were unable to find it. The next morning her maid came early, and she and the maid looked for it again, even using a vacuum cleaner, and straining the refuse from that instrument. The maid came again on Saturday and was paid for that week's work. She did not work on Sunday, but came again on Monday morning. Mrs. Caldwell instructed the maid to go into the closet with the vacuum cleaner, to clean the rugs, and to continue to search for the stone that day. Mrs. Caldwell went to work, and when she returned late that afternoon, the maid had left and never came back, although Mrs. Caldwell owed her $2 for that day's work. Appellant has not been able to locate the maid since that time, nor the stone. The maid had been working for appellant about six months, and apparently appellant trusted her and had had no difficulty with the maid in other respects.

Mrs. Caldwell testified that she knew the stone was in the ring at seven o'clock after she had eaten supper, and that she did not go out of the house between the times

she knew she had the stone and she discovered it to be missing later that evening. She had owned the ring for five years, having purchased it in 1942, and had not had the mountings on the stone tightened. She stated that the ring must have disappeared in the house. She testified that she does not remember whether she washed the dishes that night, but that very probably she washed her hands in the lavatory, and that she did not have a plumber examine the plumbing in either the kitchen or the bathroom in a search for the ring.

Two other witnesses for appellant testified only on the value of the stone at the time of loss, and the making of proof of loss. Testimony on value was also presented by defendant's sole witness, a jeweler, who also testified that the mountings on the ring were worn, and in his opinion the stone came out of the mountings by natural wear.

The policy contained a clause reading as follows: "Theft. The word 'theft' includes larceny, burglary, and robbery. Mysterious disappearance of any insured property shall be presumed to be due to theft."

This suit originated in the County Court of the First Judicial District of Hinds County, Mississippi, in which a jury returned a verdict for the present appellant, who was the plaintiff there. On appeal the circuit court held that the trial court should have granted a peremptory instruction for the insurance company, appellee here, and acted accordingly.

Appellant argues that the trial court was correct in submitting the case to the jury. He says that it was a jury question as to whether the presumption created by the policy ever came into effect by "mysterious disappearance", and as to whether the presumption once existing was rebutted by the evidence. He further says that even disregarding the presumption, the question was for the jury under these facts as to whether the stone was covered by the theft policy. Appellee contends that it is reasonable to presume that the stone fell from the

setting either into the lavatory or the kitchen sink, and that it is still there, and that the presumption, if it ever existed, was rebutted by this and other evidence. Appellee says that the stone was first lost in appellant's house, and therefore this theft policy does not apply, and that the jury's verdict was purely speculative without any permissible circumstantial evidence of theft.

The case focuses on three questions: (1) whether there was a "mysterious disappearance" which put into operation the contractual procedural presumption of theft; (2) whether the presumption was rebutted by the evidence; and (3) if it was rebutted, whether there was enough circumstantial evidence of theft to make a question for the jury on the issue of theft vel non.

Certain basic principles are pertinent in considering this rather singular factual situation and theft insurance policy. There have been, over a period of years, many cases involving the question of whether the evidence was sufficient to justify a jury's finding of theft and liability under a theft insurance policy. While mere disappearance of an article is not sufficient of itself to warrant a finding that its loss was due to theft, the courts have held consistently that a finding of such a felonious abstraction may in a proper case rest upon circumstantial evidence. Thus, "proof that the loss was the result of . . . theft is not necessary if facts are shown which warrant the inference that the loss was due" to theft. 29 Am. Jur., Insurance, Section 1516.

Even in cases where the policy required "direct and affirmative" or "conclusive" evidence, the courts have refused to construe these terms in a strict technical sense, because to do so would render the policy valueless except in the most unusual cases, and have in policies containing that clause sustained verdicts based on wholly circumstantial evidence. Note, 41 A. L. R. 846, 851. See also Annotations in 44 A. L. R. 471; 54 A. L. R. 467; 169 A. L. R. 233. In Jackson Steam Laundry v. Aetna Casualty & Surety Co., 1930, 156 Miss. 649, 126 So.

478, the burglary policy contained a very restricted clause and the court found that there was no circumstantial evidence justifying submitting the issue to a jury. It is not applicable to the present case.

The only case which we have found involving the interpretation of a similar "mysterious disappearance" clause is Davis v. St. Paul Mercury & Indemnity Co., 1946, 227 N. C. 80, 40 S. E. (2d) 609, 611, 169 A. L. R. 220. The plaintiff sued on a policy with a clause exactly similar to the present one. Plaintiff had put $97 in his pocket and gone on a fishing trip with a friend. The boat capsized and he was thrown in the water. After he had recovered his fishing equipment he went ashore, and for the first time since leaving home he felt for his money and found that it had in some manner disappeared. The trial court refused to submit to the jury the issue of whether plaintiff had sustained the loss by theft, and only submitted whether plaintiff's property had mysteriously disappeared, and in what amount, if any, defendant was indebted to plaintiff.

The Supreme Court held that the trial judge erred because the policy was a theft policy and did not cover property mislaid or lost. However, it pointed out that the "mysterious disappearance" clause was designed to afford the insured a larger measure of protection than under the old theft policies, and that it created a rule of evidence binding on the parties. Theft is presumed until the presumption is rebutted, but the burden of proof is at all times on the plaintiff. The Court held that a mysterious disappearance is one " under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain." It then said: "This showing alone is sufficient to repel the motion to dismiss as in case of nonsuit. If the jury shall find therefrom that the property did in fact mysteriously disappear, then such finding compels the inference of theft, unless the facts and circumstances surrounding the disappearance

are such as to rebut the presumption the parties have agreed shall arise from the proof of the mysterious disappearance. This is for the jury to decide.

"It is true, as argued by defendant, that inasmuch as the only person with plaintiff was a man of high character, it is plausible to conclude the money was not stolen. It is likewise possible that it was lost when he fell in the water. These are speculations or surmises generated by the circumstances surrounding the mysterious disappearance. These circumstances must be considered by the jury in arriving at a verdict. They do not, as a matter of law, rebut the presumption of theft."

The Davis case is discussed in 169 A. L. R. at page 257, and in 29 Am. Jur., Insurance, 1949 Supplement, page 144. The Court remanded the case for a jury issue under the principles stated above. We think that the present problem is a stronger one on the factual issue of theft than is the Davis case.

The jury here could have found that the stone mysteriously disappeared. Quite apparently the stone dropped from its setting in the home of appellant between seven and nine-thirty that night. Moreover, though Mrs. Caldwell did not know where the stone was, it still remained her property while in her and appellant's house. See 34 Am. Jur., Lost Property, Secs. 2, 3, 6, 14. Of course the policy does not cover a mere loss, but the jury could have found, as it apparently did, that the maid later located the stone and appropriated it for her own use. A relevant circumstantial factor is that the owner carefully looked for the stone, and has never found it to this day. McDuff v. General Accident F. & L. Assur. Corp., 1925, 47 R. I. 172, 131 A. 548. Others are the disappearance of the maid on the day after she had been looking for the stone, and her failure to collect from appellant wages owed to her. Emery v. Ocean Accident Guarantee Co., 1922, 209 Mich. 295, 176 N. W. 566; Reed v. Am. Bonding Co., 1916, 102 Neb. 113, 166 N. W.

196, L. R. A. 1918C, 63; Kroloff v. Southern Surety Co., 1924, 197 Iowa 1244, 198 N. W. 629. It is true that it is possible that the stone is still in the house, possibly in the lavatory or the kitchen sink, but these are speculations or surmises generated by the circumstances surrounding the mysterious disappearance. They must be considered by the jury in arriving at a verdict, but they do not as a matter of law rebut the presumption of theft. Whether that presumption was rebutted is for the jury to decide.

In the absence of a presumption, the puzzling circumstances surrounding the total disappearance of the stone and the evidence here would justify the jury in finding an inference of theft. ██ In brief, there were adequate facts to sustain the jury's finding that there was a mysterious disappearance of the stone and therefore to create a presumption of theft. Whether that presumption was rebutted by other evidence and possibilities is a question for the jury. And even if it were rebutted we think that there was enough circumstantial evidence of theft to make a question for the jury on the issue of theft vel non.

Appellee complains of certain instructions given the appellant by the trial court, dealing with the presumption of theft, but we do not think that appellee was prejudiced by them, and note that appellee also obtained an instruction under the same theory. ██ A party may not complain of instructions where he has procured similar instructions which use substantially the same language or theory. Patterson v. State, 1931, 159 Miss. 882, 132 So. 558; Ross v. Louisville & N. R. Co., 1938, 181 Miss. 795, 181 So. 133. Appellee's motion to strike "Appendix A" to appellant's brief is sustained, but that does not affect the conclusions already outlined above.

The judgment of the circuit court is therefore reversed, and that of the county court for appellant is reinstated.

Reversed and judgment of Trial Court for appellant reinstated.

PER CURIAM.

· The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is reversed, and judgment of the trial court for appellant is reinstated.

**Alexander, J.** (concurring).

I am in full accord with the controlling opinion herein. I agree that, by procuring instructions of like import with those of the plaintiff, the defendant is denied the right to complain.

The use of presumptions in the instructions ought never to be permitted, since, in the first place they are as legal devices only for the court, and, as processes of reasoning, clearly argumentative.

But here the so-called presumption is not such in a judicial sense. There is no presumption of law or fact that an article which disappears mysteriously has been stolen. This assumption is created by the contract and is tantamount to a definition of theft in terms of such disappearance. That is, they mean the same thing. Theft is the hazard insured against and not disappearance, but they were defined as identical.

So that it was not improper to charge, as authorized by the contract, that mysterious disappearance created a presumption of theft. Indeed, such loss is ex vi termini theft. Nor is such a rebuttable presumption, for it is not a true legal presumption. True, the fact of the loss or of the theft is rebuttable as any other fact. It is as if the appellee had insured against a loss through mysterious disappearance. The fact of disappearance could be rebutted by appearance; the mystery could be dissipated by knowledge. Short of such disclosures, the terms mean the same thing.

Wherefore, this case presents only an apparent exception to the judicial policy against the use of inferences and presumptions in instructions.

In my opinion the instructions could properly have authorized recovery upon preponderant evidence of such disappearance, since, by contract and not legal presumption, this was sufficient.