McBRIDE, Judge.
Plaintiff, Mrs. Duralde Claiborne, sued her insurer United States Fire Insurance Company, to recover $2000, the maximum coverage under a personal theft policy issued by defendant to Mrs. Claiborne, for the mysterious disappearance of plaintiff’s diamond engagement ring and wedding band. From a judgment in plaintiff’s favor, defendant insurer appealed.
Under Coverage A of the policy the insurer agreed:
“To pay for loss by theft or mysterious disappearance from the premises or, if the property has been placed therein by an insured for safekeeping, from within any bank, trust or safe deposit company, public warehouse, or occupied dwelling not owned or occupied by or rented to an insured, of such of the following classes of property as are indicated by a specific limit of insurance applicable thereto in the declarations:
“a. jewelry and furs, which words for the purpose of this insurance mean jewelry, watches, necklaces, bracelets, gems, precious and semiprecious stones, articles of gold and platinum, furs, and articles containing fur which represents their principal value.”
A summary of the facts surrounding the alleged loss of the two pieces of jewelry may be stated thus:
The diamond engagement ring and wedding band were received by Mrs. Claiborne from her late husband in 1919. For years she wore the rings and kept them in a bank box during summer vacations. Shortly before her husband’s death in 1960, her engagement ring was broken and both Mr. and Mrs. Claiborne took it to a jeweler to be repaired, but the jeweler returned the ring to Mrs. Claiborne in a jeweler’s envelope advising her against the immediate repair thereof for reasons which need not be stated here. Thereafter, plaintiff’s husband died, and the envelope, into which she also placed the wedding band, was deposited by her in a jewelry box which she kept in her armoire in her bedroom. The jewelry box contained other valuable jewelry, including diamonds. There were double locks on the armoire.
The policy covered the period from May 3, 1963 to May 3, 1964. Mrs. Claiborne testified “ * * * in (December ) 1963 I' went to get it (the engagement ring) to be fixed, because you see, I wasn’t wearing jewelry when my husband died. So, I didn’t have occasion to go in my jewelry at all.” It was then Mrs. Claiborne discovered that the envelope containing the diamond ring and the wedding band was missing from the jewelry box but the other jewelry remained therein.
*317 There was a mysterious disappearance of the two articles of jewelry within contemplation of the policy. Up to the date of trial below Mrs. Claiborne had never been able to locate her rings and the only presumption is that they disappeared under unknown circumstances and in a mysterious manner.
We reiterate the definition of mysterious disappearance adopted by this court in Midlo v. Indiana Lumbermen’s Mutual Insurance Co., La.App., 160 So.2d 314:
“Mysterious disappearance was early defined in Davis v. St. Paul Mercury & Ind. Co., 227 N.C. 80, 40 S.E.2d 609, 169 A.L.R. 220, 223 (1946), followed in Loop v. United States Fidelity & Guaranty Ins. Co., 63 So.2d 247 (La.App.1953), and Deckler v. Travelers Indemnity Company, 94 So.2d 55 (La.App.1957), as ‘ * * * any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. * * * a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity.’ ”
Loop v. United States Fidelity & Guaranty Ins. Co., La.App., 63 So.2d 247, cited on appellant’s behalf, in which the policy provisions differ from those before us, is easily distinguished from the instant case. What our predecessors held there was that the provisions of a theft policy, that mysterious disappearance of any insured property shall be presumed to be due to theft, may be relied on whenever the facts do not themselves belie the presumption.
Appellant complains strenuously that Mrs. Claiborne did not prove that the two rings were located in the jewelry box at the time the policy was issued in May, 1963, as she had not opened the box at any time during the policy period until December, 1963, when she discovered the “loss”. In other words, counsel takes the position that the policy did not cover the two rings because Mrs. Claiborne did not have them when the policy was issued. We are satisfied that in June, 1963, within the policy period, Mrs. Claiborne went into her jewelry box to get a locket for her daughter, and on that occasion the jeweler’s envelope was in the jewelry box and that she felt the envelope and the engagement ring and wedding band were contained therein. The trial court believed her testimony to that effect and we have no reason to doubt its correctness. We think that the plaintiff has adequately shown that the two rings were in her possession and in her jewelry box shortly after the issuance of the policy, and that they mysteriously disappeared some months afterward during the term of policy coverage.
Counsel for plaintiff also contends that the articles might not have mysteriously disappeared probably because of their having been inadvertently “thrown out” by Mrs. Claiborne, pointing to a police report in which it is stated Mrs. Claiborne told the officers investigating the occurrence that it was possible that she threw the rings out “in the trash.” The officer who testified did not write the report and there is no evidence substantiating the verity of the mentioned statement therein. Moreover, the officer stated that Mrs. Claiborne made no such statement.
The point whether Mrs. Claiborne has adequately proven the value of the diamond ring also came in for considerable discussion, the appellant contending that the proof of value offered by the plaintiff is insufficient to support the judgment. Plaintiff said her engagement ring was platinum with diamonds on either side with a “beautiful” two karat, pure white stone, which was reasonably free from imperfection, in the setting. Plaintiff’s expert as to the valuation of the ring was Mr. Milton Adler, a well known diamond expert in New Orleans. Mr. Adler, who never saw Mrs. Claiborne’s ring, put before her a tray containing numerous diamonds and Mrs. Claiborne selected one she said was
*318 about the size of the diamond in her engagement ring and from this selection made by plaintiff Mr. Adler was able to place a valuation of $2400 on Mrs. Claiborne’s ring. Appellant complains of this method of proving the loss. We think that from the appraisal of a comparable stone the value of the lost diamond could be satisfactorily established. Under the peculiar circumstances of the case the amount of the loss could not be otherwise shown.
We have searched the jurisprudence for cases involving a similar method of evaluating a stolen diamond and could find but one analogous case, New Amsterdam Casualty Co. v. James, 122 Fla. 710, 166 So. 813, which was an action on a burglary policy for the loss of some diamonds. In a syllabus therein this language is found:
“In action on burglary policy, witness was properly permitted to testify as to value of perfect diamonds of similar size as those stolen, where there was uncon-tradicted evidence that stolen stones were perfect.”
In the instant case Mr. Adler did not testify as to the valuation of a perfect stone. His appraisal concerned an average white diamond of old-fashioned design which would require cutting to bring it up to the standard of a modern shaped diamond. Allowance was made for the cutting.
We agree with the following observations found in the lower court’s reasons for judgment, viz.:
“Again we must first refer to Mrs. Claiborne’s testimony. Defendant has made a great issue over whether or not •a layman could tell the exact size, color, shape, et cetera of a diamond ring, and •certainly the average layman is not in a position to tell the exact size, color, shape, brilliancy, et certera, of a diamond ring; however, as defendant’s own expert testified, Mr. Sizeler, a layman can tell whether or not a flaw exists of the type that is noticeable to a layman, that is a difference between a white and a yellow stone. Mr. Sizeler stated that a layman could tell the difference between a white and a yellow stone with defects. Furthermore, we must remember that Mrs. Claiborne testified that she was present with her husband when the ring was purchased. She knows it to be a two karat, knows it to have been a two karat ring, the date of acquisition being in May of 1919; that she also knows of her own knowledge that her husband paid $900.00 for the ring in 1919. It must also be remembered that the expert whose opinion this Court values, Mr. Adler, stated that he did not base his evaluation of the ring on the finest white colored ring, nor on the worst white colored ring; that he took an average white color ring of old-fashioned design, and cutting, which ring he assumed could be recut at a loss in the karats of approximately twenty-seven and a half per cent on recutting. He then evaluated the ring, and the setting at approximately $2400.00. And of course, he evaluated the wedding ring at $55.00.
“We believe that defendant’s own expert, Mr. Sizeler, agreed in principal with the testimony of Mr. Adler, although he stated that he would not evaluate a ring unless he saw it. He did state that an old-fashioned stone, miner cut diamond of two karats could be recut at a maximum loss of forty per cent to the ring, and if it were so recut, it would be worth in his opinion, approximately $1800.00.
“Both experts stated that in their opinion, they have never known of a diamond that has been recut to have been completely destroyed. Both said that the danger is only in the amount of karats that could be lost in the recutting, and Mr. Sizeler stated that the maximum amount that could be lost would be forty per cent.
*319 “The Court feels that in an instance of this type, plaintiff did everything possible to establish the valuation and did establish to the Court’s satisfaction, that her ring was probably worth more than the amount stated by Mr. Adler or Mr. Sizeler, in that she had an opportunity to wear and observe this ring, and receive the plaudits and comments of the public for approximately forty years. And during that time she stated that it was a perfect white colored stone, and that she had received many compliments on that stone.”
We find no error in the judgment appealed from and, therefore, it is affirmed.
Affirmed.