**Joe MANCHA, Appellant,**

v.

**The ST. PAUL FIRE & MARINE INSUR-ANCE COMPANY, Appellee.**

**No. 651.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 9, 1971.

Rehearing Denied Dec. 30, 1971.

Pena, McDonald & Gutierrez, Laurier B. McDonald, Edinburg, for appellant.

Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, McAllen, for appellee.

OPINION

NYE, Chief Justice.

This is a suit on a homeowner's insurance policy for the recovery of the value of a ring alleged to have mysteriously disappeared. The trial court granted the insurance company's motion for summary judgment and entered judgment that the insured take nothing. The insured appeals.

Joe Mancha, the insured, alleged that he purchased a homeowner's insurance policy from Jesse Trevino Insurance Agency, who wrote the policy in question with The St. Paul Fire & Marine Insurance Company, the appellee herein. The policy was issued on May 20, 1969. Prior to that time, the insured submitted a list of jewelry to the insurance agent (appraised by a jeweler) and requested complete insurance coverage on the jewelry in question. The insured plead that the agent agreed to insure the jewelry and did in fact tell the insured that the jewelry was covered by insurance. On or about June 2, 1969, the appellant lost his Masonic diamond ring, valued by the appraiser at $4,000.00. The agency informed the insured that he had no specific insurance on the jewelry as scheduled personal property. The agent denied that he told the insured that the jewelry was covered. He contended that he was unable to get the jewelry insured as requested.

The agent had, however, issued a homeowner's policy. This policy provided for

coverage of unscheduled personal property, including jewelry, in the amount of $500.00. The insurance company denied the insured's claim under this policy, contending that as a matter of law the ring was not lost under such conditions that would permit recovery under the homeowner's policy.

The trial court severed the insured's suit against the agent for failure to write the specific insurance policy in question, from the cause of action against the insurance company on the homeowner's policy. The trial court then granted the insurance company's motion for summary judgment that the insured take nothing. The insured has appealed.

The insurer contends that the only possible way that the ring could have been covered under the homeowner's policy is under the terms of coverage B "UNSCHEDULED PERSONAL PROPERTY". The policy provides that unscheduled personal property is insured against loss by "theft, larceny, burglary, robbery, or attempts thereat, and *mysterious disappearance*". (Emphasis supplied.) The appellant takes the position that the ring in question did in fact disappear under such circumstances that coverage under the "mysterious disappearance" provisions of the insurance policy in question would apply. Appellee insurance company answers this contention by arguing that the term "mysterious disappearance" as used in the homeowner's policy does not mean that the policy in question is an all risk policy. Finally, appellee says that under the undisputed facts in this case, the plaintiff is not entitled to recovery because as a matter of law the loss of the ring was not a mysterious disappearance.

The insurance company points out that the insured's own testimony establishes (as a matter of law) that the ring slipped off of his finger, went down the drain while he was washing dishes, and therefore, this fact does not make the disappearance of the ring mysterious. Therefore, the insurer reasons that the insured's loss is not covered by the terms of the policy.

The insurance company selects certain statements made by the insured from his deposition to substantiate this contention. In his deposition the insured testified in part as follows:

"Q. All right. In other words, nobody robbed you of this ring or took it away from you?

A. No, sir.

Q. And nobody stole it, as far as you know?

A. Neither that.

Q. And you were working around the kitchen, washing dishes, your hands were wet and perhaps soapy,—

A. Yes, sir.

Q. —and you know from your experience in the past that *sometimes* rings come off when your hand gets slick and wet?

A. Yes, sir.

Q. And the *probabilities* are that is what happened to this ring?

A. Yes, sir.

Q. And it *could have* washed down the sink and went off in the plumbing?

A. Yes, sir.

Q. *Probably?*

A. Yes.

Q. That is *your opinion* of what happened to it?

A. *I don't know* of any other way." (emphasis supplied)

We agree that this testimony, standing alone, would probably have supported a verdict of a jury that the ring in question did not disappear mysteriously. But this selected testimony evidencing uncertainty such as "sometimes", "probabilities", "could have", "probably", "your opinion", "I don't know", does not conclusively determine

that the ring was lost under such circumstances that the insured knew for certain how it disappeared.

Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgments shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The burden of proof is on the movant. All doubts as to the existence of a genuine issue as to a material fact are resolved against him. The evidence must be viewed in a light most favorable to the party opposing the motion and all conflicts in the evidence are disregarded. The evidence which tends to support the position of the party opposing the motion is accepted as true. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex.Sup.1970); Great American Reserve Insurance Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41 (Tex.Sup.1965).

The selected testimony quoted by the insurance company to substantiate their position is taken out of context. Considering all of the testimony, the honest uncertain admission is weakened by other testimony in the record. The insured was a Latin American, educated in Mexico, who used a Spanish interpreter in the taking of the deposition. He stated that he opened his cafe business every morning at 5:00 a. m. and started working in the kitchen until the waitresses arrived. He said that about an hour or two after he had been working in the kitchen on the morning in question, he noticed that his ring had disappeared. He stated "It came out or dropped out" . . . "I wasn't aware in which way." He stated that it was on his hand when he first came to work. He started washing dishes and working around in the kitchen. An hour or so later he noticed that it was not on his hand. He was not aware of how it came off of his hand. He admitted from his experience in the past, that sometimes rings come off when your hand gets wet and slick. He was then asked this question: "And the probabilities are that is what happened to this ring." Answer "Yes, sir". Q. "And it could have washed down the sink and went off in the plumbing?" Answer: "Yes, sir." He related that the first thing he did, when he noticed his ring was not on his finger, was to start looking for it, trying to locate where it was. He contacted the insurance agent and told him that he had lost it. The agent said he would report the loss to the company.

The insurance company admits that under coverage B of the insurance policy unscheduled personal property that is owned, worn or used by the insured, is insured against lost by theft, . . . and against *mysterious disappearance.* An article is lost when the owner has lost the possession or custody of it. It is a condition where he is ignorant of its whereabouts and it cannot be recovered by ordinary diligent search. There is no contention made by the insurance company that the insured has intentionally concealed or deposited the ring in a secret place. The insured did not throw the ring away. He did not hide it; he did not give it away; he did not destroy it; nor did he actually know that the ring went down the drain. This latter fact may be implied by the insured's action in looking for it and trying to locate it. He "wasn't aware of how it came off". It is admitted that the ring is no longer in existence.

The insurance policy does not define the term "mysterious disappearance". However, the term has been defined in one case determined in Texas and in other cases in other jurisdictions. The Waco Court wrote about the loss of a watch that was covered by the "mysterious disappearance clause" in a homeowner's policy. The watch was lost while the insured was shopping during a one hour interval and the insured had not seen the watch since then. The Waco Court said:

"We have found no Texas cases defining 'mysterious disappearance', but there are cases from other jurisdictions which do this.

The Supreme Court of North Carolina (1946) in Davis v. St. Paul Mercury and Indemnity Co., 227 N.C. 80, 40 S.E.2d 609 defined *'mysterious disappearance' as 'any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity.'"* (Emphasis supplied.)

The court reversed and rendered judgment for the plaintiff and against the insured. Johnson v. General Accident, Fire & Life Assur. Corp., 454 S.W.2d 837 (Tex.Civ. App.—Waco 1970).

This same definition is quoted and followed in the following cases: Claiborne v. United States Fire Insurance Co. (1966), La.App., 193 So.2d 315; Caldwell v. St. Paul Mercury & Indemnity Co. (1950), 210 Miss. 320, 49 So.2d 570; Loop v. United States Fidelity & Guaranty Ins. Co., La.App., 1953, 63 So.2d 247; Deckler v. Travelers Indemnity Co., La.App., 1957, 94 So.2d 55; Sigel v. American Guarantee & Liability Ins. Co., 1953, 173 Pa. Super. 434, 98 A.2d 376; Brier v. Mutual Insurance Co. of Hartford (1965), 3 Conn. Cir. 326, 213 A.2d 736; Austin v. American Casualty Co. (D.C.App.1963 reh. den.) 193 A.2d 741.

In each of the above cited cases, the ascertainment of what constituted "mysterious disappearance" was determined by the courts as a question of fact. Viewing the evidence as we must in a summary judgment case, we hold that the insured's loss of his Masonic ring was not as a matter of law excluded under the provisions of the policy in question. This is a fact issue that must be determined by a jury.

The case is, therefore, reversed and the cause remanded for trial.

SHARPE, J., not participating.