**COASTAL PLAINS FEEDERS, INC.,
Plaintiff-Appellee Cross Appellant,**

v.

**HARTFORD FIRE INSURANCE CO. et al., Defendants-Appellants
Cross Appellees.**

No. 75–3482.

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1977.

John E. Lunsford, Lawrence B. Clark, Birmingham, Ala., for defendants-appellants cross appellees.

Duke, Booth, Kaufman & Rothfeder, Albert W. Copeland, Richard H. Gill, Montgomery, Ala., for plaintiff-appellee cross appellees.

Before RIVES,* GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Plaintiff-appellee Coastal Plains Feeders, Inc.[1] operates a commercial feed lot near Samson, Alabama where it holds cattle for their owners and fattens them for market. Defendant-appellant insurance companies[2] issued "floater" policies to Coastal Plains insuring the cattle it held against loss by "theft, but excluding escape or mysterious disappearance." In this diversity action[3] Coastal Plains sued the companies on the insurance contracts to recover the value of 512 cattle that vanished from its feed lot. Coastal Plains also sought an additional $50,000 compensatory and $100,000 punitive damages for the insurance companies' allegedly tortious refusals to pay the claims.

The district court dismissed Coastal Plains' latter claims for failure to state a cause of action under Alabama law. After trial a six person jury found for Coastal

---

* Rives, Circuit Judge, was a member of the panel that heard oral argument but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

1. Appellant on its cross appeal.

2. Hartford Fire Insurance Company, Royal Globe Insurance Company, and Aetna Insurance Company.

3. 28 U.S.C. § 1332.

Plains on the contractual claims in the amount of $172,657.48. The district court entered judgment for that amount plus $9,064.54 interest.

The insurance companies appeal the judgment, arguing (1) that the district court incorrectly instructed the jury as to the elements that Coastal Plains had to prove to recover; (2) that there was insufficient evidence of theft to present a jury question on liability; and (3) that there was insufficient evidence of the cattle's value to support the damage award. Coastal Plains cross appeals, complaining that the district court erred in dismissing its claims for compensatory and punitive damages for the companies' refusal to pay on the policies. For the reasons stated herein, we affirm the district court in all respects.

## I. FACTS.

Coastal Plains put on evidence showing that in late 1973 and early 1974 it held about 7,000 cattle in its feeder pens near Samson. On December 21, 1973 Lawrence Systems, Inc., which issued warehouse receipts for the cattle held by Coastal Plains, made a rough head count indicating that no cattle were missing from the Samson lot. Lawrence records also showed that it could account precisely for the cattle belonging to each owner who withdrew cattle from the lot before December 23, 1973. Each owner's cattle were inventoried into separate pens by exact head count. When an owner withdrew his cattle, the number withdrawn plus the number of deaths[4] plus the number previously withdrawn always added up to the number that the owner had delivered. In addition, some owners counted their own cattle at the lot, and before December 23 none found any shortages.

In late January of 1974 Coastal Plains became concerned because the amount of feed the cattle were consuming was abnormally low. Its nutritional and veterinary consultants found nothing wrong with the feed or cattle, however, and the drop in consumption was attributed to rainy weather. When consumption continued to be low through February, some owners became worried. On March 10 Coastal Plains conducted an exact head count of all the cattle at the lot. This count revealed, and the parties stipulated, that 512 cattle were missing.

Searches of the surrounding countryside, investigation by law enforcement officers, and offer of a $5,000 reward turned up neither hide nor hair of the missing cattle. Some light was shed on their disappearance, however, by three members of a family who lived on a lonesome dirt road leading to the back pens of the feed lot. They testified that on a number of occasions between December and March they saw an unmarked empty double-decker ("possum belly") cattle truck going up the road toward the lot at dusk without headlights. They also heard a heavy diesel truck return down the road in the early hours of morning. None of them ever saw such a large truck on the road before or since.

The back pens to which the dirt road led were not locked, and the heaviest loss of cattle was from those pens. The night watchman, who quit in February, could not see or hear anything happening at the back pens. Two men could load as many as 70 cattle into the kind of truck the family saw in a short time. Coastal Plains' fences were in good repair, and it had never had a problem with cattle straying or escaping.

## II. THE INSURANCE COMPANIES' APPEAL.

 *A. Instructions on theft and mysterious disappearance.* The insurance policies provided that the companies would be liable for the loss of cattle "through theft, but excluding . . . mysterious disappearance." The insurance companies contend that, under Alabama law, Coastal Plains carried both the burden of proving that theft was the cause of the loss, and the burden of proving that mysterious disappearance was not the cause of the loss.[5]

---

4. A "death certificate" was drawn up for each cow that died on the lot.

5. Under the rule of *Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),

They further contend that the district court erred in failing to instruct the jury that Coastal Plains carried the latter burden as well as the former. We find it unnecessary to decide whether the burden of disproving mysterious disappearance was on Coastal Plains rather than the insurance companies; for assuming that it was on Coastal Plains,[6] the district court's instructions sufficiently apprised the jury that Coastal Plains was required to disprove mysterious disappearance in order to recover.[7]

The district court did not just tell the jury that Coastal Plains must carry the burden of proving theft to recover under the policy. Rather, it told the jury repeatedly that Coastal Plains must prove that theft, *and not mysterious disappearance*, was the cause of its loss:

> [D]efendants deny that Coastal Plains suffered any loss covered under these insurance policies since Coastal Plains has by the evidence shown nothing more than a mysterious disappearance of cattle and

. . . a mysterious disappearance of cattle is not covered or compensable under these policies.

Appendix at 245–46.

> [The i]nsurance policies . . . provide that Coastal Plains is insured against theft, but not escape or mysterious disappearance.

Appendix at 247.

> The policies of insurance here in question provide insurance for theft, . . . but exclude escape or mysterious disappearance . . . . The burden of proof of theft, as I have told you, is on Coastal Plains, the plaintiff. That burden of proof is to reasonably satisfy you from the evidence that the loss in fact resulted from a theft or thefts.

Appendix at 249. The district court defined "mysterious disappearance" as "disappearance under unknown, puzzling, and baffling circumstances which arouse wonder, curiosity, or speculation, or under circumstances which are difficult or hard to explain." Ap-

---

the burden of proof in diversity cases is allocated according to state law. *Palmer v. Hoffman*, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645 (1943); *Benavides v. Mut. Life Ins. Co.*, 516 F.2d 393, 400 (5th Cir. 1975).

**6.** We recognize that there is some Alabama authority for the broad proposition that, where the general liability clause of an insurance policy itself contains an exclusion, the insured bears the burden of pleading and proving that he is not within the exclusion; although where an exclusion is stated in a separate clause, the insurer bears the burden of pleading and proving the applicability of the exclusion. *E. g., New York Life Ins. Co. v. Beason*, 229 Ala. 140, 141–142, 155 So. 530, 531–32 (1934); *Protective Life Ins. Co. v. Swink*, 222 Ala. 496, 498, 132 So. 728, 729 (1931); *see Ruffalo's Trucking Serv., Inc. v. Nat'l Ben-Franklin Ins. Co.*, 243 F.2d 949, 952–53 (2d Cir. 1957) (accord) (New York law). We note, however, that some states which have considered policies of the precise kind under consideration here, insuring against "theft, but excluding mysterious disappearance," have concluded that the insurer bears the burden of proving applicability of the exclusion. *Lovas v. St. Paul Ins. Cos.*, 240 N.W.2d 53, 62 (N.D.1976); *see Long v. Glidden Mut. Ins. Ass'n*, 215 N.W.2d 271, 274 (Iowa 1974). This court, interpreting under Florida law an "all-risks" policy with a liability clause that excluded recovery for mysterious disappearance, reached the same conclusion. *Jewel-*

*ers Mut. Ins. Co. v. Balogh*, 272 F.2d 889, 891–92 (5th Cir. 1959); *see Betty v. Liverpool and London and Globe Ins. Co.*, 310 F.2d 308, 310–11 (4th Cir. 1962) (accord). At least one other court, though, has suggested that it would place the burden of negating mysterious disappearance under policies like the one here on the insured. *See Baugher v. Hartford Fire Ins. Co.*, 214 Kan. 891, 900–901, 522 P.2d 401, 409 (1974) (by implication).

**7.** All parties invite us to undertake an extensive analysis of the origin and development of various forms of "mysterious disappearance" clauses in insurance policies. *See generally Lovas v. St. Paul Ins. Cos.*, 240 N.W.2d 53 (N.D.1976); Dingus, *What is Mysterious Unexplainable Disappearance?*, 7 Forum 113 (1971–72); Kelly, *"Mysterious Disappearance" Defined*, 28 Ins. Counsel J. 72 (1961); Opgenorth, *Mysterious Disappearance and Presumption of Theft Clause*, 1952 Ins.L.J. 97; Comment, *The Mysterious Disappearance Clause in Theft Insurance*, 22 Wash. & Lee L.Rev. 291 (1965); 5 J. Appleman, Insurance Law and Practice ¶ 3173.25 (ref. ed. 1970); Annot., 12 A.L.R.3d 865 (1967). Although we have examined the above-cited sources, we think that it would add little to the resolution of the issues in this case to rehearse this confused history at length.

pendix at 249.[8] Thus, although the district court correctly charged that Coastal Plains could prove theft through circumstantial evidence,[9] it also made it clear to the jury that Coastal Plains had to prove something more than "mysterious disappearance," so defined, to make out a circumstantial case of theft. This amounted to an instruction that under the policy, Coastal Plains had to "negate mysterious disappearance" to prove "theft."

■■■ The district court rejected the insurance companies' request to charge explicitly that Coastal Plains carried two burdens—that of proving theft, *and* that of negating mysterious disappearance—on the ground that this could confuse the jury. The court apparently wanted to avoid misleading the jury into thinking that it was logically possible for Coastal Plains to prove theft *without* negating mysterious disappearance, as it had defined that term.[10] We think this was a proper concern. The fact that the insurance contracts were drawn in confusing language does not justify instructing the jury in confusing terms—especially at the instance of the parties responsible for the source of the confusion.[11] We hold that to inform the jury adequately that Coastal Plains carried the "burden of negating mysterious disappearance" as well as of proving theft, it was necessary only to define "mysterious disappearance" in the generally accepted manner, *see* text and note at note 8 *supra* ; and then to emphasize that Coastal Plains would be entitled to recover only if it proved theft, as distinguished from mysterious disappearance so defined.

---

**8.** The district court's definition of "mysterious disappearance" tracked that given by the first court to consider the phrase. In *Davis v. St. Paul Mercury & Indem. Co.,* 227 N.C. 80, 83, 40 S.E.2d 609, 611 (1946) the court, considering a theft policy which stated that mysterious disappearance raised a presumption of theft, said:

> [A] mysterious disappearance . . . embraces any disappearance or loss under unknown, puzzling or baffling circumstances which arouse wonder, curiosity, or speculation, or circumstances which are difficult to understand or explain. A mysterious disappearance is a disappearance under circumstances which excite, and at the same time baffle, wonder or curiosity.

It appears that most of the courts that have considered the phrase in various policies have accepted this definition. *E. g., Claiborne v. United States Fire Ins. Co.,* 193 So.2d 315, 317 (La.Ct.App.1966); *Caldwell v. St. Paul Mercury & Indem. Co.,* 210 Miss. 320, 328–330, 49 So.2d 570, 572 (1950); *Gifford v. M.F.A. Mut. Ins. Co.,* 437 S.W.2d 714, 716 (Mo.Ct.App.1969); *Raff v. Farm Bureau Ins. Co.,* 181 Neb. 444, 447–448, 149 N.W.2d 52, 55 (1967); *Mancha v. St. Paul Fire & Marine Ins. Co.,* 474 S.W.2d 563, 566 (Tex.Civ.App.1971). All of the parties before us rely on this definition; we therefore accept it for purposes of this case.

**9.** Even under policies insuring against "theft, but excluding mysterious disappearance," it is accepted universally that the insured may prove theft by proving that circumstances surrounding the disappearance of property support an inference that theft probably was the cause of the disappearance. *Long v. Glidden Mut. Ins. Ass'n,* 215 N.W.2d 271, 273 (Iowa 1974); *Baugher v. Hartford Fire Ins. Co.,* 214 Kan. 891, 902–903, 522 P.2d 401, 410–11 (1974); *Gifford v. M.F.A. Mut. Ins. Co.,* 437 S.W.2d 714, 717 (Mo.Ct.App.1969); *Raff v. Farm Bureau Ins. Co.,* 181 Neb. 444, 447–448, 149 N.W.2d 52, 55 (1967); *Lovas v. St. Paul Ins. Cos.,* 240 N.W.2d 53, 60–61 (N.D.1976). If the insured were required to prove theft by so-called direct evidence—production of the thief or of eyewitnesses to the theft—"[t]his would be tantamount to denial of coverage for theft because theft is generally carried on in a secretive manner . . ." *Lovas, supra,* 240 N.W.2d at 60.

**10.** In denying the companies' request to instruct, the district court stated, Appendix at 252–53:

> I think this whole argument as to who has the burden of negating [mysterious disappearance] is nothing except confusing, because if the plaintiff sustains their burden of proving theft, they have automatically negated mysterious disappearance, and they can't establish loss by theft without negating mysterious disappearance or escape; and I have told the jury if that is all that happened, if it is just a mysterious disappearance or if it is an escape, then plaintiff can't recover.

**11.** At least two insurance company lawyers have questioned the usefulness of mysterious disappearance clauses. "While 'mysterious disappearance' may not have made mental cases out of any of us, it has produced many headaches." *Kelly, supra* note 7, at 72. "[Mysterious disappearance clauses have] created problems which perhaps are more troublesome than the original evil." *Opgenorth, supra* note 7, at 97. We are not inclined to disagree.

B. *Sufficiency of the evidence of theft.* The insurance companies argue that the district court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict, on the ground that Coastal Plains' evidence was insufficient to prove theft of the cattle. The rule in this circuit is that "in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question." *Boeing Company v. Shipman,* 411 F.2d 365, 368 (5th Cir. 1969) (en banc); *see generally* 5 Moore's Federal Practice ¶ 38.10. Considering "all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion[s]," 411 F.2d at 374, we conclude that Coastal Plains made out a sufficiently strong case of theft to get to the jury.

■ Coastal Plains presented evidence tending to show that the disappearance of the cattle was not due to death, sale or reclamation by owners, straying, or miscounting. We need not decide whether this evidence by itself would support an inference that the cattle were stolen, *compare Lovas v. St. Paul Insurance Companies,* 240 N.W.2d 53 (N.D.1976) (evidence of theft of hogs held sufficient) *with Baugher v. Hartford Fire Insurance Company,* 214 Kan. 891, 522 P.2d 401 (1974) (evidence of theft of cattle held insufficient); *Gifford v. M.F.A. Mutual Insurance Company,* 437 S.W.2d 714 (Mo.Ct.App.1969) (evidence of theft of cattle held insufficient); *Raff v. Farm Bureau Insurance Company,* 181 Neb. 444, 149 N.W.2d 52 (1967) (evidence of theft of hogs held insufficient); for here Coastal Plains also showed that an unmarked cattle truck was seen at night near the inaccessible back pens of the feed lot during the period in which the cattle disappeared, adding strength to the theory that the cattle in fact were stolen. *See Wiley v. United Fire & Casualty Company,* 220 N.W.2d 635, 636–37 (Iowa 1974) (evidence of theft of cattle held sufficient on facts nearly identical to instant case); *Gifford v. M.F.A. Mutual Insurance Company, supra,* 437 S.W.2d at 717 (suggesting that evidence of theft would

have been sufficient if someone had seen "a strange truck traveling to or from where the cattle were kept," or had "heard any unusual activity at night near the pasture" where the cattle were kept; or if there was "evidence of [someone] being at or near the cattle under suspicious circumstances"). To hold that the jury could not reasonably infer from this evidence that the cattle were stolen would render meaningless the rule that Coastal Plains could prove theft through circumstantial evidence. *See* text and note at note 9 *supra.* We hold that the district court did not err in submitting the case to the jury on the issue of liability.

■ C. *Sufficiency of the evidence of value.* Although the insurance companies do not brief the issue, they state that an issue presented for review is whether Coastal Plains presented sufficient evidence of the amount of damages to take their case to the jury. Coastal Plains, of course, bore the burden of proving the amount of its damages; the jury could not be left free to speculate as to this amount. *Great American Insurance Company v. Railroad Furniture Salvage, Inc.,* 276 Ala. 394, 400, 162 So.2d 488, 493 (1964).

The insurance policies provided for recovery of the "actual cash value [of the cattle] on the date of loss," less a deductible of $50 per head up to $5,000 per occurrence. Coastal Plains showed the weight of the cattle when they were delivered to the feed lot. It also showed that the cattle gained an average of two pounds each a day at the lot. Finally, it showed that cattle were selling from 48 to 50 cents a pound at the time of the loss.

■ To arrive at its requested damage figure, Coastal Plains calculated the total weight of the cattle on March 9, the day before the loss was discovered, by adding two pounds per day per head up to that date to the cattle's weight when delivered. It then multiplied this figure times the price per pound that it had shown, and subtracted $5,000, the maximum deductible for a single "occurrence." The jury awarded precisely the amount that Coastal Plains requested, $172,657.48.

Although the insurance companies do not specify in what particulars they think the evidence of value was insufficient, we suspect they object to Coastal Plains' fixing of the day before the loss was discovered as the "date of loss" for purposes of calculating the weight and value of the cattle, and to its characterization of the loss as a single "occurrence" for purposes of applying the deductible. The evidence, summarized in Part I above, tended to show that the theft was accomplished sometime between December 23, 1973 and March 10, 1974, perhaps over a number of nights; hence, the cattle might have been stolen before March 9, and there might arguably have been more than one "occurrence" of theft.

■ We do not think, however, that Coastal Plains should be barred from recovery merely because it could not pinpoint more precisely the date or dates on which the cattle were stolen. Theft often is committed surreptitiously and often goes undetected for some time. Where proof of the value of stolen property turns partly on proof of when the property was stolen, we think it is proper to allow some leeway for approximation in establishing the date of loss. Cf. New Amsterdam Casualty Company v. W. D. Felder & Company, 214 F.2d 825, 827–28 (5th Cir. 1954) (holding evidence of value of cotton samples stolen by plain-

tiff's employees over period of time, based on estimated weight and average price of cotton stolen, sufficient to support recovery on fidelity bond). We therefore hold that Coastal Plains' evidence of the amount of its loss was sufficient to support the verdict.

## III. COASTAL PLAINS' CROSS APPEAL.

Coastal Plains argues that the district court erred in dismissing its second and third causes of action for failure to state a claim under Alabama law. Fed.R.Civ.Pro. 12(b)(6). The second cause of action alleged that in denying its claim, the insurance companies breached an implied duty to deal fairly and in good faith with Coastal Plains.[12] The third cause of action alleged that they acted oppressively and in bad faith in denying the claim.[13] Each cause of action sought $50,000 compensatory and $100,000 punitive damages, in addition to the recovery sought under the policy itself in the first cause of action.

Coastal Plains recognizes that there is no precedent in the Alabama Supreme Court or Court of Civil Appeals to support a cause of action for damages resulting from an insurance company's wrongful refusal to pay a claim. It relies heavily on an Ala-

---

12. The second cause of action alleged:

    2. Following prompt notification by plaintiff to defendants of the theft loss under said policies, defendants undertook to investigate, adjust and settle said loss. In connection therewith, defendants were under an implied duty to act fairly and in good faith with their insured, and to not unreasonably withhold payments due under their policies. Plaintiff avers that defendants have breached said duty and have unfairly and in bad faith withheld payment of plaintiff's loss, and have delayed and denied plaintiff's claim for defendants' own economic advantage.

    3. As a proximate result and consequence of defendants' aforesaid breach of duty, plaintiff has been caused to incur great expense in defending itself in suits brought by owners of the stolen cattle, and in prosecuting suit against defendants to compel them to perform their duty under their policies of insurance; plaintiff's credit has been severely impaired and its business has suffered and been damaged.

13. The third cause of action alleged:

    2. Following prompt notification by plaintiff to defendants of the theft loss, defendants undertook to investigate, adjust and settle said loss. In connection with such investigation, adjustment and settlement, defendants have acted with heedless disregard of plaintiff's rights and of defendants' duty toward plaintiff; defendants have been guilty of oppressive conduct toward plaintiff, and have deliberately, willfully, and in bad faith delayed and denied plaintiff's claim.

    3. As a proximate result and consequence of defendants' aforesaid breach of duty, plaintiff has been caused to incur great expense in defending itself in suits brought by owners of the stolen cattle, and in prosecuting suit against defendants to compel them to perform their duty under their policies of insurance; plaintiff's credit has been severely impaired and its business has suffered and been damaged.

bama trial court opinion, *Woodall v. Old Southern Insurance Company* (Circuit Court of Russell County, Civ.No. 5826, Feb. 10, 1975), which upheld a cause of action in tort seeking compensatory and punitive recovery for damages resulting from such a refusal, and on a line of cases from other states which recognize such causes of action. *See generally* Annot., 47 A.L.R.3d 314 (1973). As the insurance companies are quick to point out, however, this branch of *Woodall* has been reversed by the Alabama Supreme Court. *Old Southern Insurance Company v. Woodall,* 295 Ala. 235, 326 So.2d 726 (1976).

In *Woodall* the insured purchased a hospitalization policy on November 1, 1972 which stated that losses resulting from certain ailments

> shall be covered only if such disease, disorder, or sickness originates (becomes manifest by the symptoms usually associated therewith) and begins after the effective date and loss occurs no less than six (6) months after the effective date of this policy.

295 Ala. at 239, 326 So.2d at 728. On May 27, 1973 the insured became ill and entered the hospital with what the insurer claimed was one of the specified disorders.[14] The insurer denied liability for this and for a subsequent hospitalization on the ground that the disorder had originated less than six months after the policy was issued.

The insured died and her husband sued the insurer for compensatory and punitive damages on a variety of theories, including that the insurer had "willfully and corruptly den[ied] liability under the contract." *Id.* at 239, 326 So.2d at 728. The jury returned a general verdict for plaintiff, and the trial court denied the insurer's motions for new trial and for judgment notwithstanding the verdict. The Alabama Supreme Court reversed and remanded. Although it did not absolutely rule out the possibility of stating a cause of action for an insurer's wrongful denial of liability,[15] the court held that on the record before it the claim for wrongful denial of liability "simply charges that the company committed a tort in maliciously and fraudulently refusing to pay a claim under the policy. Without more, this claim sounds in contract." *Id.* at 243, 326 So.2d at 732. Hence, it failed to state a claim distinct from one on the insurance contract upon which relief could be granted.

The *Woodall* court found its case legally indistinguishable from *Hamner v. Mutual of Omaha Insurance Company,* 49 Ala.App. 214, 270 So.2d 87 (1972), *cert. denied,* 291 Ala. 781, 282 So.2d 256 (1973). In *Hamner* an insured sued her insurer for refusing to pay on a hospitalization policy, charging inter alia that the refusal was "oppressive, malicious and fraudulent" and demanding compensatory and punitive damages for the refusal.[16] The Court of Civil Appeals up-

---

**14.** The court expressed doubt whether the disorder was in fact one of those specified in the limitation clause. 295 Ala. at 242, 326 So.2d at 731.

**15.** There might be circumstances under which the failure to pay a claim under a policy of insurance would create a claim upon which relief may be granted sounding in tort, but such circumstances are not presented in this case. [The insurer] argues that under no circumstances could a failure to pay a claim be tortious. We need not decide that question . . .

*Id.* at 243, 326 So.2d at 732.

**16.** The *Hamner* court described the complaint as follows:

> The substance of the allegations . . . is that defendant is in the business of selling hospitalization insurance and sold a policy to plaintiff; that plaintiff filed a claim for benefits under her policy; that defendant delayed action on her claim for approximately a month and then sent an agent to her home to deny the claim; that the denial of the claim was in violation of the insurance laws of the State of Alabama . . . ; that defendant's refusal to pay the claim was oppressive, malicious and fraudulent. Plaintiff then takes more than two pages of transcript paper to describe the oppressive, malicious and fraudulent acts, their effects upon her and the damage she suffered as a result. Such damages claimed included present and anticipatory physical and mental distress, together with punitive demands. The count concludes with the allegation that the damages proximately resulted from the wrongful acts and conduct of defendant as alleged.

49 Ala.App. at 217, 270 So.2d at 90.

held the trial court's sustaining of the insurer's demurrer to this count, holding that the plaintiff

> is attempting to allege an action in tort arising out of a breach of promise in a policy of insurance. We do not think there is any foundation for such action in the laws of this State.

> .　　.　　.　　.　　.

> [The count] attempts to charge a tort arising from a denial of a claim under a policy of insurance. Such act by appellee, if wrongful, amounts only to a breach of a promise to perform and could only be complained of in an action for breach of contract. [cite]

> The manner or intent of such breach does not change the form of action, nor as a general rule, add damages not ordinarily recoverable in a breach of contract action. [cites]

49 Ala.App. at 217–218, 270 So.2d at 90.

■ The basis of the holdings in *Hamner* and *Woodall* appears to be the Alabama rule that a tort action will not lie if the wrong complained of consists of failure to perform a contract, e. g., nonfeasance. *See*

*Berry v. Druid City Hospital Board,* Ala., 333 So.2d 796, 799–800 (1976); *Hamner, supra,* 49 Ala.App. at 217, 270 So.2d at 90. The Alabama Supreme Court has recently described *Woodall* as a case where it had to decide whether the insurer's denial of liability was misfeasance or nonfeasance in order "to determine whether [an action] in tort [was] available to the plaintiff where he clearly had a cause of action for breach of contract." *Berry, supra,* 333 So.2d at 800.[17] Thus, no tort cause of action was available in *Woodall* because the insurance company's denial of liability constituted nonfeasance.

■ We find Coastal Plains' complaints in the instant case indistinguishable from the plaintiffs' in *Woodall* and *Hamner*.[18] In all three cases the wrong complained of is an allegedly wrongful denial of liability under a contract of insurance, which in Alabama's view constitutes nonfeasance. In all three cases the plaintiffs could attempt to recover on the insurance contract itself, as plaintiff here successfully has done. We hold that, on our reading of Alabama law, the district court did not err in dismissing Coastal Plains' second and third causes of

**17.** The *Berry* court also explained that under Alabama law, "an action for breach of contract can arise by virtue of misfeasance" as well as nonfeasance; and that in some such cases "the same act [of misfeasance] may constitute both a breach of contract and a breach of a duty implied by law and thereby give rise to an action *ex contractu* and *ex delicto*." 333 So.2d at 800.

**18.** Coastal Plains' reliance on *Hartford Accident & Indem. Co. v. Cosby,* 277 Ala. 596, 173 So.2d 585 (1965) is misplaced. There an insured sued his liability insurer, who had the contractual right to assume exclusive control of defense of suits against the insured, for damages resulting from its wrongful refusal to settle a suit against the insured for a sum within his policy limits. The *Cosby* court, 277 Ala. at 604–605, 173 So.2d at 592–93, quoted with approval *Am. Mut. Lia. Ins. Co. v. Cooper,* 61 F.2d 446, 448 (5th Cir. 1932), where we said in a similar case:

> In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had

a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto itself the power to determine for the insured all questions of liability, settlement, of defense and management before and during the trial, and of appeal after final judgment. We are of the opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured.

We think that the holdings in *Hamner* and *Woodall* sufficiently answer Coastal Plains' argument that these broad statements as to the insurer's duty imply a similar duty, distinct from and in addition to the contractual one, to pay valid claims under an insurance policy. We also note that *Hamner* and *Woodall* are distinguishable from *Cosby* and *Cooper* on the ground that, in the latter cases, the insurance companies undertook active control of settlement negotiations and defense; hence they committed misfeasance rather than nonfeasance. *See Waters v. Am. Cas. Co.,* 261 Ala. 252, 257–258, 260–261, 73 So.2d 524, 528–29, 531–32 (1953).

action for failure to state claims upon which relief could be granted.

AFFIRMED.